1  **ALEX R. KESSEL (State Bar No. 110715)**
   **LAW OFFICES OF ALEX R. KESSEL**
2  16542 Ventura Blvd.
   Suite 305
3  Encino, California 91436-2746
   Telephone: (818) 995-1422
4  Fax: (818) 788-9408

5  **TODD L. MELNIK, ESQ. (State Bar No. 132407)**
   20920 Warner Center Lane, Suite B
6  Woodland Hills, CA 91367
   Telephone: (818) 995-7777
7  Facsimile: (818) 594-3200
   Email: todd@toddmelnik.com
8
   **ALAN S. YOCKELSON, ESQ. (State Bar No. 130380)**
9  555 N. El Camino Real, Suite A #418
   San Clemente, CA 92672
10 Telephone: (949) 290-6515
   Email: yockelson@appellatelaw.net
11
   Attorney for Defendant,
12 **JACK SPORICH**

13

14                  UNITED STATES DISTRICT COURT

15              FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

17 UNITED STATES OF AMERICA,        ) CASE NO.: CR09-00934-PSG
                                    )
18                                  ) **NOTICE OF MOTION AND MOTION**
              Plaintiff,            ) **TO SUPPRESS AND TRAVERSE**
19                                  ) **SEARCH WARRANT REQUEST FOR**
        v.                          ) **EVIDENTIARY HEARING;**
20                                  ) **MEMORANDUM OF POINTS AND**
   JACK SPORICH.                    ) **AUTHORITIES AND SUPPORTING**
21                                  ) **DECLARATIONS**
              Defendant.            )
22                                  ) **[Federal Rules of Criminal Procedure,**
                                    ) **Rules 12(b)(3) and 41(f)]**
23 _____)
                                    DATE :    April 12, 2010
24                                  TIME :    8:30a.m.
                                    PLACE:    Courtroom 840, The
25                                            Honorable Philip S. Gutierrez

26
          **TO THE UNITED STATES OF AMERICA BY AND THROUGH ITS**
27
   **REPRESENTATIVES, PATRICIA DONAHUE AND DAN SAUNDERS, ASSISTANT**
28
   **UNITED STATES ATTORNEYS FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

                                    1

**PLEASE TAKE NOTICE** that on April 12, 2010, or as soon thereafter as counsel may be heard in the Courtroom of the Honorable Philip S. Gutierrez, defendant JACK SPORICH will move, pursuant to the Fourth Amendment of the United States Constitution and Federal Rules of Criminal Procedure, Rules 12(b)(3) and 41(f), for an order suppressing the following evidence seized on or about May 28, 2009;

1. the computer tower, Red Rock Custom Computers, DXC94-R842W, and all evidence retrieved from that tower;
2. the Maxtor External hard drive, SNB60YVKJH, and all evidence retrieved from it;
3. all of the miscellaneous documents seized from the residences, and;
4. All fifteen (15) compact data storage disks seized and any information retrieved from those disks.
5. All other physical items seized during the search.

Defendant moves to suppress said items seized pursuant to a search warrant lacking probable cause and containing false and unreliable allegations. Defendant Sporich also moves for an evidentiary hearing pursuant to *Frank v. Delaware* (1978) 438 US 154.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the attached declaration, pleadings, all reports on file in this action and on such further oral and/or documentary evidence as may be presented at the hearing on this motion.

Dated: March 1, 2010

                                        Respectfully submitted,

                                        /s/ Alex R. Kessel
                                        ALEX R. KESSEL
                                        Attorney for Defendant
                                        JACK SPORICH

                                        /s/ Todd L. Melnik
                                        TODD L. MELNIK
                                        Attorney for Defendant
                                        JACK SPORICH

                                        /s/ Alan Yockelson
                                        ALAN YOCKELSON
                                        Attorney for Defendant
                                        JACK SPORICH

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### STATEMENT OF FACT

Defendant, Jack Sporich, an ex-patriot living in Cambodia, was living in Siem Reap, Cambodia from 2001 until his arrest in 2009. In July of 2008, "Action Por Les Enfantes," ("APLE") a non-governmental, nonprofit human rights organization began surveillance of Defendant Sporich. Based on their investigation, APLE alerted the Cambodian National Police, stating that several boys claimed that Defendant engaged in mutual masturbation with them.

The Cambodian National Police arrested Defendant Sporich in early 2009. United States officials learned of the allegations against Defendant Sporich shortly after his arrest. An indictment was filed in the United States District Court on September 15, 2009, alleging three counts of violation of U.S.C. Section 2423(c).

**A.   Facts As Alleged in Affidavit in Support of Application to Search Defendant Sporich's Arizona Residence**

On May 27, 2009, the government submitted an application for a search warrant. (See Search Warrant and Supporting Affidavit attached, hereto, as Exhibit "A"). In his sworn affidavit, Special Agent Neil Burdick of the Child Exploitation Investigations Group for Los Angeles, a subdivision of the Immigrations and Customs Enforcement Department ("ICE"), submitted alleged the following:

In July of 2008, an investigator from "Action Pour Les Enfants" ("APLE"), a non-governmental non profit human rights agency, saw Defendant Sporich driving a motorcycle with a minor boy on the back. Through its investigation, APLE interviewed three boys who were seen frequenting Defendant Sporich's home. The three boys claimed that Defendant mutually masturbated with them and performed oral sex on them. The same boys were interviewed by the Cambodian National Police ("CNP") and confirmed they engaged in mutual masturbation with Defendant and received oral sex from him. Per the affidavit, ICE agents interviewed a fourth boy who claimed that Defendant Sporich squeezed his penis while bathing him. However, the affidavit does not who the alleged victim is, whom he was interviewed by, nor when or where he was interviewed. The alleged victims told the CNP that Defendant Sporich brought them gifts from the United States.

CNP obtained a search warrant for Defendant's Siem Reap's residence. ICE officials, present during the execution of the search warrant, observed that Defendant's home was a compound with multiple bedrooms. At the compound, officials observed children's toys, children's videos, bunk beds, currency, a computer and other items. During the search, ICE agents spoke with Jack Sporich's Cambodian fiancé, Prom Vorleak. The children's objects belong to the minor family members of defedant's fiancé whom resided at the home.

Defendant Sporich was arrested by CNP officials on February 2, 2009. Defendant denied doing anything wrong. Defendant Sporich stated that he had lived in Arizona and he had a sister who lived there. During the same interview, Defendant Sporich admitted to prior convictions for lewd and lascivious conduct with a child under the age of fourteen in California.

Special Agent Burdick reviewed an abstract of a judgment from Ventura Criminal Court indicating that Defendant had pled to seven counts of California Penal Code Section 288(a) after fondling the penises of and engaging in oral sex with several boys under the age of fourteen years in 1988. Defendant is a registered sex offender in the state of Arizona as a result of the California convictions.

During late November or early December of 2008, ICE Special Agent Panganiban contacted Deputy Wendy Parkinson of the Sedona Sheriff Department in Arizona regarding Defendant's registration. Deputy Parkinson indicated she was unable to meet with Defendant during prior sex registration visits to his home, however, a person claiming to be a relative, contacted her and stated that Defendant was traveling, possibly in Asia.

The Affiant reviewed Defendant's travel records, showing he made long trips between Asia and the United States between January 2005 and February 2009.

The Application for the Search Warrant states that federal agents spoke with Defendant Sporich's sister, June Caine. Ms. Caine indicated that she knew that Defendant was arrested in Cambodia. She claimed that Defendant Sporich had previously molested a cousin of theirs and that he had never been the same since. Ms. Caine said she thought that Defendant Sporich was guilty of the current charges, however, she admitted to having no specific knowledge of any crimes in Cambodia. She further stated she believed that Defendant had moved to Cambodia to molest

children.

According to Ms. Caine, Defendant Sporich had last visited his Arizona residence in November of 2008, for approximately five days. During that time, Ms. Caine said Defendant used his computer to e-mail his wife, Prom Vorleak. Ms. Caine said she did not know how Defendant made his travel arrangements, but she thought he used a travel agency based on a business card for a travel agency she had seen in the house.

Ms. Caine claimed that Defendant used the computer to develop and print photographs he took in Cambodia. She said she had seen a printed photograph at Defendant's home, depicting a minor Cambodian child, naked from the waist down, urinating. Ms. Caine said that Defendant also had photographs from his wedding at the house. Ms. Caine reported seeing candy, toys and roller skates at Defendant's residence. When asked why he kept his possessions in the Arizona home, Ms. Caine responded that she did not know.

**B.    The Alleged Victims' Sworn Testimony Presented at Defendant's Cambodian Criminal Trial**

On August 30, 2009, Defendant Sporich was expelled from Cambodia and released to the United States Immigration and Customs Enforcement Agency ("ICE"). ICE transported Defendant Sporich to Los Angeles, California on August 31, 2009, to stand trial. On December 1, 2009, while incarcerated in the United States, Defendant Sporich was tried in absentia in Cambodia for alleged conduct referenced in the instant search warrant. In addition the same victims in Cambodia are the same victims whose statements were used to substantiate probable cause for the instant warrant. After hearing sworn testimony from the complaining witnesses, denying all allegations against Defendant Sporich, a judge acquitted Defendant of all charges. At trial, the sworn testimony of the alleged victims was as follows:

The first witness, Thai S., a fourth-grader, denied all sexual misconduct allegedly committed by Defendant. When the Court asked Thai S. why he had previously claimed that Defendant had committed such acts against him, he replied:

When I was giving answers to the court's question, my grandmother was absent. The fact that I said that Jack used to play with my penis because I was forced to do so. I could not remember the person who forced me to give such answer. I was given bread to eat with curry soup and was told that if I

5

did not give such answer, I would not allowed to return home." [see Transcript of Cambodian Trial Transcript, attached as Exhibit "D" to Defendant's Request for Judicial Notice Filed Under Separate Cover, hereafter "RT"].

Thai S. testified that the person who forced her to give the answers was a "rather big woman." [RT 2]. He said that after his questioning, he was not allowed to return home and was taken to a center. [RT 3]. He told the Court that he was scared at the time of the police questioning, but he was not afraid in Court. [RT 3]. Yean Prounh, Thai S's grandmother, testified that Thai S. told her that "that Jack never did anything to him." [RT 6].

Kim T., another complaining witness, was twelve years old at the time of the trial. [RT 3]. Kim T. denied being "ordered to play with Jack's penis" and "Jack playing" with his penis. [RT 4]. Kim T. testified that Meta T., an child who failed to appear at trial, and a taxi driver working for a not for profit agency, told him to say that Defendant Sporich had molested him. He said that he accused Defendant of inappropriate sexual conduct because he was ordered to "give the same answers as those of [Meta T.] so I could go to have a meal soon because I was hungry." [RT 4]. Kim T. was also forbidden to have his parents present during the police interrogation. [RT 4]. Kim T.'s father, Sokun Sok, testified that "[w]hen my son was brought home, I asked him about the matter and he told me that Jack never did anything to him." [RT 6].

Kavey C., the third complaining witness to testify at Defendant Sporich's trial, was eleven years old. He denied telling minor Meta T. that Defendant Sporich had ever touched him. [RT 5]. He further denied being molested by Defendant Sporich. [RT 5]. Kavey C's father testified that when his son was questioned about whether Defendant Sporich had done anything to him, he denied it. The woman questioning him responded that that was the "incorrect answer." [RT 6]. She told Kavey C. that Kim T. and Meta T. had said that Defendant played with Kavey C.'s penis. "Then my son gave the answer according to the woman's order." [RT 6]. "After the police finished questioning my son, I asked him about it and he told me that [Defendant] never played with his penis." [RT 6].

One of the boys who accused Defendant Sporich of molestation was Meta T. Despite receiving a summons to appear at the trial, neither Meta T. nor his mother obeyed the order. [RT 8]. The trial transcript reveals that neither presented any reason to the Court for not appearing. [RT 9].

6

Bunthang Sun, a not for profit worker, testified that he interviewed Meta T. regarding the alleged molestation. [RT 6-7]. Bunthang Sun conducted the interview in his office, with the school principal's permission. [RT 6-7]. Per Bunthang Sun, investigation into the molestation accusations against Defendant Sporich began as a result of Meta T.'s statements and information from an NGO. [RT 7]. During the trial, Bunthang Sun testified: "[r]egarding the fact that the answers given by the victims and the parents of the victims in the hearing are different from those given during my investigation, I have nothing to be asserted." [RT 7]. All three of the boys who testified at the trial stated that they never saw the Defendant molest Meta T.

Defendant Sporich was acquitted of all charges at trial. [RT 10]. Meta T.'s family's civil suit for monetary damages was also dismissed by the Court. [RT 10].

### C. Statements Allegedly Made by John Doe 4

According to the criminal complaint, the fourth alleged victim, identified as "John Doe 4," was interviewed by APLE investigators after he was seen leaving Defendant Sporich's residence. [See Criminal Complaint, at p. 34, attached as Exhibit "A" to Defendant's Request for Judicial Notice Filed under Separate Cover, hereinafter "Complaint"]. At the time of the interview, John Doe 4 told APLE investigators that "Jack" never did anything to him, but sometimes in the early morning hours, he saw John Doe 2 sleeping in the same bed as "Jack." [Complaint p. 34].

The complaint states that on February 3, 2009, Special Agent Li and Special Agent Nguyen interviewed John Doe 4 in the presence of Rong Rattana, the APLE Child Protection Coordinator for Siem Reap, and APLE Social Worker Song Saman. [Complaint p. 35]. Mr. Rattana served as the translator during the interview. According to Mr. Rattana, John Doe 4 reported that Defendant Sporich had bathed him in the shower a "long time ago." [Complaint p. 36]. Mr. Rattana told the special agents that John Doe 4 told him that Defendant Sporich had touched his penis two or three times during bathes and when he was in the pool. [Complaint pp. 35-36].

### D. Search of Defendant Sporich's Arizona Residence

On May 28, 2009, ICE SAC agents from Phoenix, assisting agents from the SAC Los Angeles Child Exploitation Group, executed the instant search warrant at Defendant Sporich's Arizona residence, 612 Desert Sage Lane, Sedona, Arizona, 86336. SA Burdick located several image files

7

containing depictions of minor males as well as travel documents saved onto a computer hard drive. This computer tower was seized. In addition, an external hard drive, fifteen compact discs with digital photographs and other documents were seized.

II

## DEFENDANT HAS STANDING TO ASSERT A FOURTH AMENDMENT VIOLATION

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Amendment protects persons against unreasonable searches of "their persons and houses" and thus indicates that the Fourth Amendment is a personal right that must be invoked by an individual. *see Katz v. United States*, (1967) 389 U.S. 347, 351, 88 S.Ct.507, 19 L.Ed.2d 576 ("The Fourth Amendment protects people, not places"). But the extent to which the Fourth Amendment protects people may depend upon where those people are. The Supreme Court has held that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Illinois v. Rakas* (1978) 439 U.S. 128, 143. *See also Rawlings v. Kentucky,* (1980) 448 U.S. 98, 106.

Here, the location searched was Defendant Sporich's Arizona residence. Prior to submitting the application for search warrant, the affiant confirmed that the United States Department of State passport application database indicates that Defendant Sporich's mailing address was the one subject to search. During interviews with special agents, Defendant Sporich and his sister, June Caine, confirmed that the residence subject to search belonged to Defendant Sporich and that he stayed there for a week or so at a time when he was in the United States. As such, the Defendant has a legitimate expectation of privacy in the searched premises and standing to challenge the illegal search and subsequent seizure. [See Defendant's Declaration attached hereto as Exhibit "B"].

///

///

# III
## DEFENDANT IS ENTITLED TO CONTROVERT FACTUAL STATEMENTS CONTAINED IN THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FOR HIS PROPERTY IN ARIZONA

The Fourth Amendment requires that the defendant be able to challenge a facially valid search warrant, where it "contains deliberate or reckless omissions of fact that tend to mislead." *United States v. Stanert* (9th Cir. 1985) 762 F.2d 775. In *Frank v. Delaware* (1978) 438 US 154, the United States Supreme Court held that a defendant may challenge the veracity of a facially valid warrant affidavit upon a specific primary showing that: (1) the affiant made statements that were deliberately false or in reckless disregard of the truth; and (2) the affidavit's remaining content is insufficient to justify a finding of probable cause.

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, *supra*, 438 US 154, 155-156. The *Franks* Rule applies to "affidavits marred by omissions of facts...." *United States v. Lefkowitz* (9th Cir 1980) 618 F2d 1313, 1317; *Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965 (Fourth Amendment violation occurs where affiant intentionally or recklessly omits facts required to prevent technically true statements in search warrant affidavit from being misleading). In a motion to traverse, the defendant bears the burden of proving that the affidavit in support of a search warrant contains intentionally false or recklessly false statements. *Franks v. Delaware, supra,* 438 U.S. 154 at 155; *People v. Maestas* (1st Cir. 1988) 204 Cal.App.3d 1208, 1216.

///

///

# IV

**THE ASSERTIONS OF CHILD MOLESTATION IN SUPPORT OF THE SEARCH WARRANT IN LIGHT OF THE OVERWHELMING EVIDENCE OF POLICE COERCION AND THREATS AGAINST THE CHILDREN WITNESSES CLEARLY INDICATES THERE THAT THE STATEMENTS IN THE AFFIDAVIT WERE MADE RECKLESSLY**

Pursuant to the Fourth Amendment, the Court must allow the Defendant to challenge a search warrant affidavit valid on its face when it contains intentional or reckless omissions of fact which tend to mislead. *United States v. Stanert* (9th Cir. 1985) 762 F.2d 775, 781 [citations omitted]. "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Id* [citations omitted].

To make an adequate showing of recklessness on behalf of the affiant, defendant is not required to present "clear proof of deliberate or reckless omission." *Id*. (citing *United States v. Chesher* (9th Cir. 1982) 678 F.2d 1353, 1362). However:

> [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks v. Delaware*, *supra*, 438 U.S. 154 at 171.

In *Liston v. County of Riverside, supra*, 120 F.3d 965, one of the issues decided was whether or not a sheriff deputy, acted with deliberate or reckless dishonesty in the affidavit he submitted affixed to his application for a search warrant. In that case, the sheriff department obtained a search warrant to search a suspect's home believed to be involved in a large scale methamphetamine operation. *Id*. at 968. At the time of the search, the suspect was no longer living at the premises, however, the plaintiffs were. *Id*. In his affidavit in support of the application for search warrant, Sheriff Deputy Danny Scaturro stated that he believed contraband would be found in the suspect's home based on his training and experience. *Id*. at 969. The affidavit further stated that the affiant determined the suspect's address through utility records, surveillance previously conducted, the

10

Department of Motor Vehicle Records, and previous incidents were the suspect had been followed to and from the location. Id. at 969. The affidavit described the physical appearance of the house, however, it omitted the presence of a "for sale" sign on the lawn. *Id*. at 969-970.

In holding that the affiant acted recklessly, the Court found, "[t]he For Sale/Sold signs would put a reasonable magistrate on notice that a change in occupancy would be occurring in the near future, if it had not already occurred, and that special consideration must be given both to the timeliness of the execution of the warrant itself." *Id.* at 974, 975.

In *United States v. Stanert* (9th Cir. 1985) 762 F.2d 775, a California Municipal Court issued a telephonic search warrant. *supra* at 777. The affiant, a Sheriff's officer assigned to Narcotics Task Force, stated she believed there was a illegal drug laboratory in the residence. In support of her affidavit, she told the magistrate that an anonymous male informed police that the occupants of the residence were using ether for drug production. He said he was a biochemist and knew what ether smelled like. He also gave law enforcement the license plate of a Mercedes parked in front of the residence and stated the owner's name is "Stan."

The affiant told the magistrate that a different anonymous caller called, complaining of a strong smell emitting from the residence. He said he saw the doors of the house open, as if for ventilation. He also saw a Mercedes Benz parked in front. The affiant further stated that a confidential informant, a reliable source, identified the defendant as one who manufactured cocaine. This informant had never given false or misleading information in the past. The affiant further stated law enforcement ran the DMV record associated with the Mercedes Benz and that it corresponded to the defendant's name and residence. Law enforcement also checked DEA records and discovered that the defendant was believed to be involved in a cocaine and marijuana smuggling case and that he had been arrested in Panama with fourteen pounds of marijuana.

The affiant also told law enforcement that based on complaints regarding the smell of ether, she and another agent went to the residence and also smelled ether. She said when they arrived at the home, they saw a Mercedes Benz parked in front. The year previously, the affiant stated that law enforcement had investigated a "clandestine laboratory at the residence which had blown up due to

11

the ignition of ether fumes." Based on the affidavit, the magistrate signed a search warrant. The search warrant was executed and neither drug paraphernalia nor ether were found. *Id.* at 778.

The defendant moved the court to grant a *Franks* evidentiary hearing, claiming the affidavit contained the following misrepresentations and omissions:

(1) the affiant misrepresented what the first anonymous caller said because the affiant claimed he stated that the occupants were using ether to manufacture drugs, when in fact, it was his "opinion" that the "occupants were probably freebasing cocaine."

(2) the affiant's observations of the smell of ether were untrue;

(3) the affiant misrepresented defendant's previous Panama arrest by omitting the fact that defendant was never convicted of any offense;

(4) the affiant misrepresented the explosion on defendant's property by omitting the fact that he did not purchase the property until after that event;

(5) the affiant did not tell the judge that their request for a search warrant had been denied by another judge.

*Id*. at 778.

Noting that "clear proof of deliberate or reckless omission is not required," because "such proof is reserved for the evidentiary hearing," the court concluded that the defendant had made a sufficient showing that the affiant had made reckless misrepresentations in her affidavit warranting an evidentiary hearing. *Id.* at 782-783.

Like the affiants in *Stanert* and *Liston*, Special Agent Neil Burdick acted recklessly and neglected to discovery and apprise the magistrate of the coercive tactics used by Cambodian police involving threats and dishonest representations of the other children's statements to pressure the children into falsely alleging that they were molested by Defendant Sporich. As revealed by their sworn testimony at trial, all of the children denied being molested. The three children told the Court that the reason they lied about the alleged sexual abuse was because they were scared and intimidated by the their interrogators. Two of the children were not allowed to have their parents present. They

12

were told that they were not allowed to leave. They were told that they could not eat unless they gave the proper answers. When they answered truthfully, they were told that their answers were "incorrect." The Cambodian authorities even prevented one of the children from returning home to his family, sending him to an orphanage for several weeks. [see Exhibit B and D of defendant's Request for Judicial Notice filed under separate cover].

Such abhorrent interrogation tactics, used to coerce involuntary, false statements from children, are recognized by the United States' courts as violating the Fourteenth Amendment of the United States' constitution not only because they offend our societal human values, but because they lead to highly suspect, unreliable statements. *Jackson v. Denno*, 378 U.S. 368, 385-386 (1964), *quoting Spano v. New York*, 360 U.S. 315, 320-321 (1959) and *Blackburn v. Alabama*, 361 U.S. 199, 206-207 (1960); *Douglas v. Woodford*, 316 F.3d 1079, 1091 (9th Cir. 2003) (finding that illegally confessions are unreliable). Here, the overwhelming evidence at trial firmly establishes that the children lied to the Cambodian authorities because they were scared and told they had to. Even two adults testified that immediately upon returning home from the interrogation, their children stated that Jack Sporich had never harmed them. A simple interview of the minor victims would have revealed the coercive circumstances under which the victims provided obviously involuntary statements.

Here, the affidavit indicates that ICE agents never personally interviewed any of the first three children who alleged that Jack Sporich sexually abused them. As to the fourth, John Doe 4, ICE agents relied on APLE investigators, the very same people who coerced and threatened the other complaining witnesses, during a second interview of John Doe 4 at APLE facility. ICE never questioned this child about the conditions of his original interrogation by APLE. Nor was he asked to explain the inconsistencies between his original statement and the second statement he gave Mr. Rattan. In fact, ICE failed to conduct any independent investigation as to any of the complaining witnesses and their statements.

Certainly, the magistrate's probable cause determination would have been greatly impacted had he been apprised of the coercive and unreliable circumstances surrounding how the alleged

1 molestation was disclosed. Furthermore, these statements were the only substantive evidence of any
2 sexual abuse in the entire affidavit. By omitting such pertinent information from his affidavit in
3 support of the application for the search warrant, Special Agent Burdick acted recklessly in disregard
4 of the truth, misleading the magistrate. The gravamen of the alleged probable cause in the instant
5 affidavit, namely Defendant's purported illegal sexual conduct with minors, is, in fact false, and a
6 product of illegal policing tactics. These tactics could have been learned simply by interviewing the
7 minor children.

8 Even if Special Agent Neil Burdick was personally unaware of the outrageous conduct
9 employed by the Cambodian police and their affiliates to obtain false statements from the children
10 witnesses, his sworn statement in the affidavit is not deemed any less reckless for evidentiary hearing
11 purposes. *Franks, supra*, 438 US 154 at 165 (a police officer may not insulate himself from another
12 officer's "deliberate misstatements merely by relaying it through an officer personally ignorant of its
13 falsity"). As such, Defendant Sporich respectfully moves this court to grant his petition for an
14 evidentiary hearing.

## V
## THE AFFIDAVIT MUST BE EXCISED AND THE REMAINING PART OF THE AFFIDAVIT MUST BE RETESTED FOR PROBABLE CAUSE

19 Once Defendant establishes beyond a preponderance of the evidence that the affidavit
20 contains a false statement that was made intentionally or with reckless disregard for the truth, the
21 Court must set the affidavit's false material to one side and determine whether the affidavit's
22 remaining content is sufficient to establish probable cause. *United States v. Chesher, supra*, 678
23 F.2d 1353, 1362 (quoting *Franks*, *supra*, 438 U.S. at 171-172); *United States v. Stanert, supra*, 762
24 F.2d 775 at 782 (to warrant a *Franks* hearing, the defendant must show that the affidavit purged of
25 falsities and supplemented by the omissions would not be sufficient to support a finding of probable
26 cause).

27 To determine whether probable cause exists, the Court must look at the totality of the
28 circumstances set forth in the search warrant affidavit. *Illinois v. Gates* (1983) 462 US 213; *United*

*States v. Stanert* (9th Cir. 1985) 762 F.2d 775, 778. "Because probable cause is a fluid concept not readily, or even usefully, reduced to a neat set of legal rules, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances as set forth before him, including the 'veracity' and 'basis of knowledge' of persons supplying information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stanert*, *supra*, 762 F.2d 775, 778-779. Probable cause requires more than "bare suspicion" of criminal activity. *Brinegar v. United States,* 338 U.S. 160, 175-176 (1949). Moreover, probable cause requires that the facts be based on reasonably trustworthy information. *Id*.

Here, when purged of the false statements, the affidavit does not contain evidence, either direct or circumstantial, sufficient to suggest to a reasonable person that Defendant Sporich's Arizona residence was likely to contain evidence of a crime.

The APLE investigator's observations of a minor boy riding with Defendant Sporich on his motorcycle are not sufficient to conclude that criminal conduct was occurring. Even when coupled with ICE agents observations of children's toys, a bunk bed, boys' clothing, video games and children's videos during the search of Defendant Sporich's Cambodian residence, the totality of the circumstances does not begin to suggest there is a fair probability that contraband or evidence of a crime would be found in Defendant Sporich's Arizona residence. Again, the affiant failed to apprise the magistrate that the childrens' toys, bunk beds and video gamed belonged to the minor family of defedant's fiancé who along with those minors resided at defendant's residence. This fact, if disclosed would certainly have dispelled the negative inference that defendant attracted minors to his home by buying and keeping child articles at his house.

Moreover, Ms. Cain's statements regarding her brother's five-day visit to the Arizona residence and the gifts allegedly purchased for Cambodian children are not sufficiently close in time to submission of the search warrant application to support a search of the Arizona residence. An affidavit must be based on facts "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." (citations and quotations omitted) *Durham v. United States*, (9th Cir. 1968) 403 F.2d 190, 193. "The information offered in support of the application for

a search warrant is not stale if there is sufficient basis to believe, based on the continuing pattern or other good reasons, <u>that the items to be seized are still on the premises</u>." (emphasis added, citations and quotations omitted) *United States v. Lacy* (9th Cir. 1997) 119 F.3d 742 at 745.

Per the affidavit, Defendant Sporich had not even been to the Arizona residence since November of 2008, more than six months before the application for search warrant was submitted. The affidavit does not indicate when Ms. Cain observed the gifts, roller skates, toys and candy at the home. Logic dictates that it must have occurred *before* Defendant Sporich returned to Cambodia, since the purported purpose for purchasing the items was to ship them to Cambodia.[1] The Cambodian Police's seizure of toys and roller skates at Defendant's Cambodian residence buttresses the obvious conclusion that these items were no longer in Arizona when the instant search warrant was applied for, since they were found in Cambodia. The affidavit fails to indicate when Ms. Caine last saw a computer at the Arizona residence. Without such information, her claim that she saw Defendant Sporich using a computer in November of 2008 to write e-mails to his wife and develop photographs is not close enough in time to reasonably believe the computer would still be present more than six months later. It appears most of ms. Cain's statements were pure speculation and demonstrated a sister who despised her brother.

The affidavit also relies on Defendant Sporich's more than twenty-year-old California conviction for lewd acts upon a minor. The 1988 conviction is clearly stale, bearing no relation to the conduct that allegedly occurred twenty years later in Cambodia. Even if, *arguendo*, the previous conviction was indicative of criminal behavior some twenty years later in Cambodia, it does not support the conclusion that Defendant Sporich's Arizona residence contains criminal evidence or contraband. *United States v. Chesher, supra*, 678 F.2d 1353, 1363 (The fact that Defendant was identified as a Hell's Angel Gang member in 1973 is too old to be of any real value to a magistrate in 1979); *Liston v. County of Riverside, supra*, 120 F.3d 965 (special consideration must be given to the timeliness of the evidence supporting the warrant application and the timeliness of the execution of the warrant itself).

---

[1] It must be noted that no toys, candy or roller skates were found at the Arizona residence.

16

On May 27, 2009, there was not a sufficient basis to believe that evidence of criminal activity was still present in Defendant Sporich's Arizona residence. The facts relied upon were stale and the search and seizure was an illegal violation of Defendant's rights under the Fourth Amendment of the United State's Constitution.

The instant search warrant also relies on statements from Defendant Sporich's sister, which are speculative and unreliable. Ms. Cain admits that she has no personal knowledge of any sexual misconduct on behalf of her brother. Her statements regarding her belief that Defendant Sporich moved to Cambodia to molest children and his travel arrangements are mere guesses. Even her statements regarding Defendant Sporich's computer use, observations of candy, roller skates and toys are so unclear as to time that they are insufficient to support a reasonable belief that criminal evidence was at the residence in May of 2008. As such, the affidavit fails to establish a nexus between the criminal activity that allegedly occurred between November of 2008 until February of 2009 in Cambodia to Defendant's residence in the United States. *United States v. Chesher, supra*, 678 F.2d 1353, 1363 (*quoting Sgro v. United States*, 287 U.S. 206, 211 (1932) an affidavit in support of a search warrant "must speak as of the time of the issue of that warrant.").

## VI
### WHEN AN AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT IS SUBMITTED WITH RECKLESS DISREGARD FOR THE TRUTH, THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE IS INAPPLICABLE

The good faith exception to the exclusionary rule is inapplicable where the search warrant affidavit contains false statements made with reckless disregard for the truth. *United States v. Cavazos* (5th Cir. 2002) 288 F.3d 706. "Suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *U.S. v. Leon* (1984) 468 U.S. 897, 923. It was reckless for the affiant in the instant search warrant to rely upon the statements of Cambodian officials and Defendant's sister without conducting any independent investigation into the complaining witnesses' claims of sexual abuse. The evidence seized from Defendant Sporich's Arizona residence is not subject to the good faith exception to the exclusionary rule. To ensure protection of Defendant Sporich's constitutional right against unreasonable search

and seizure, the evidence must be suppressed.

## VII
## CONCLUSION

The NGO and Cambodian authorities used fear, lies, threats, hunger and isolation during their interrogation of the complaining witnesses. When the children told the truth, they were repeatedly told their answers were wrong and they would not receive food or be free to leave until they gave the "right" answer for days. As a result, the children had no choice but to comply with the authorities' demands, making false accusations against the Defendant. Whether intentional or not, there is no doubt that Special Agent Burdick acted recklessly by relying on the children's statements to establish probable cause with no independent investigation or corroboration, while completely omitting the facts which strongly negate their truth and reliability. The law forbids the government may not save the validity of the warrant by claiming that Special Agent Burdick did not have personal knowledge of the government interrogators unreliable and unlawful conduct. As the affiant, Special Agent Burdick was under the obligation to supply all material facts to the magistrate. Defendant respectfully asks this court to grant his motion to suppress the evidence illegally seized from his Arizona residence. In the alternative, Defendant ask that this Court grant his motion to traverse and order an evidentiary hearing pursuant to *Franks v. Delaware* (1978) 438 US 154.

Dated: March 1, 2010                     Respectfully submitted,
                                         /s/ Alex R. Kessel
                                         ALEX R. KESSEL
                                         Attorney for Defendant
                                         JACK SPORICH

                                         /s/ Todd L. Melnik
                                         TODD L. MELNIK
                                         Attorney for Defendant
                                         JACK SPORICH

                                         /s/ Alan Yockelson
                                         ALAN YOCKELSON
                                         Attorney for Defendant
                                         JACK SPORICH