STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (California Bar No. 132610)
Assistant United States Attorney
312 North Spring Street, 13th Floor
Los Angeles, California 90012
Telephone: (213) 894-0640
Facsimile: (213) 894-6436
E-mail: patricia.donahue@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACK LOUIS SPORICH,<br>aka "Dad,"<br><br>Defendant. | No. CR 09-934-PSG<br><br>NOTICE OF FILING PLEA AGREEMENT SIGNED BY DEFENDANT ON MAY 14, 2010 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California, hereby files the plea agreement signed by defendant on May 14, 2010. This agreement was filed as Exhibit E to the under seal Supplemental Declaration of Patricia A. Donahue in Support of the Government's Opposition to Defendant's Motion to Withdraw Guilty Plea (CR 191).

Dated: June 22, 2015

Respectfully submitted,

STEPHANIE YONEKURA
Acting United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

/s/
PATRICIA A. DONAHUE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar #132610)
patricia.donahue@usdoj.gov
DANIEL A. SAUNDERS (Cal. Bar #161051)
daniel.saunders@usdoj.gov
Assistant United States Attorneys
Violent & Organized Crime Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0640/2272
Facsimile: (213) 894-3713

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JACK LOUIS SPORICH,<br>aka "Dad,"<br>Defendant. | No. CR 09-934-PSG<br><br>PLEA AGREEMENT |

1. This constitutes the binding plea agreement between JACK LOUIS SPORICH ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

PLEA

2. Defendant agrees to plead guilty to counts one and three of the indictment in United States v. Jack Louis Sporich, CR No. 09-934-PSG.

NATURE OF THE OFFENSE

3. In order for defendant to be guilty of counts one and three, which charge violations of Title 18, United States Code, Section 2423(c), the following must be true: (1) Defendant knowingly traveled in foreign commerce; (2) defendant thereafter engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a boy under the age of 18 years; and (3) defendant was a United States citizen at the time of the offense.

PENALTIES AND RESTITUTION

4. The statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 2423(c) is: 30 years imprisonment; a period of supervised release of any term of years not less than 5 years, and up to life; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100. If defendant has a prior sex offense conviction, as defined in Title 18, United States Code, Section 2426(b)(1), then the statutory maximum term of imprisonment for each violation of Title 18, United States Code, Section 2423(c) is 60 years imprisonment. Defendant admits that he has a prior sex offense conviction, as defined in Title 18, United States Code, Section 2426(b)(1). Therefore, the total maximum sentence for all offenses to which defendant is pleading

guilty is: 120 years imprisonment; a period of supervised release of any term of years not less than 5 years, and up to life; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $200.

5. Defendant understands that as a condition of supervised release, under 18 U.S.C. § 3583(d), defendant will be required to register as a sex offender. Defendant understands that independent of supervised release, he will be subject to federal and state registration requirements, and if he resides in California, he will be subject to the registration requirements of California Penal Code Section 290. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon his release from confinement following conviction.

6. Defendant agrees to make full restitution for the losses caused by defendant's activities. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the counts to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those charges. Defendant agrees to pay, in an amount to be determined by the Court at sentencing but not to exceed $30,000 for the care (including medical and psychological care) and education of the minor boys with whom he engaged in illicit sexual conduct, which include but are not limited to the boys named in counts one and three of the Indictment. Defendant

further agrees to make restitution at the time of sentencing. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

7. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

9. Defendant further understands that the convictions in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's pleas of guilty.

FACTUAL BASIS

10. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts

includes facts sufficient to support pleas of guilty to the charges described in this agreement. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

On or about November 19, 2008, defendant Jack Louis Sporich ("Sporich"), a citizen of the United States, knowingly traveled in foreign commerce, from Los Angeles, California, to Siem Reap, Cambodia. After his arrival in Cambodia, Sporich engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with M.T. and T.S., each of whom was a boy less than 18 years of age. M.T. was a 12-year old Cambodian boy. T.S. was also a 12-year old Cambodian boy. Sporich was born in 1934.

Sporich was building a residence with several bedrooms, a playroom, and a swimming pool and water slide in Siem Reap, Cambodia. M.T. and T.S. lived with their families near Sporich's residence. On February 2, 2009, the Cambodian National Police searched Sporich's residence pursuant to a search warrant and found remote control cars and other toys, video games, children's videos, children's clothes, and bulk Cambodian currency. Sporich had been observed riding his motorbike in Siem Reap and dropping currency on the ground for children to pick up.

Sporich encouraged M.T. and T.S. to come to his residence, where they swam in the pool, played with the toys, took showers, and slept over. Sporich gave money to M.T. to go to school, and gave M.T. money on the weekends. Sporich also gave food to M.T. for M.T. to take home to his family. T.S. lived with his

grandmother, as both of his parents are deceased. Sporich had T.S. play, swim and watch television at Sporich's residence, and Sporich gave food and money to T.S.'s grandmother.

In exchange for the benefits that Sporich provided to M.T. and T.S and to the families of these boys, Sporich engaged in the sexual acts described below with M.T. and T.S. On several occasions, Sporich had M.T. lie next to Sporich in bed, where Sporich put his hand inside M.T.'s underwear and fondled M.T.'s penis. Sporich also took M.T.'s hand and placed it inside Sporich's shorts on Sporich's penis. Sporich also took off M.T.'s underwear and orally copulated M.T. on several occasions. Sporich also took showers with M.T. and touched M.T.'s penis when they were in the shower.

Sporich also touched and squeezed T.S.'s penis while T.S. was naked in the bathtub in defendant's Siem Reap residence, and defendant reached into T.S.'s swimming trunks and touched T.S.'s penis when T.S. was in the swimming pool at defendant's Siem Reap residence.

On or about February 2, 2009, Sporich was arrested by the Cambodian National Police. On or about August 31, 2009, Sporich was expelled from Cambodia and was brought from Cambodia to the Central District of California, where he was arrested pursuant to a warrant issued in this case.

On or about September 21, 1987, Sporich was convicted of Lewd or Lascivious Acts With a Child Under 14 years of Age, in violation of California Penal Code Section 288(a), in the Superior Court of California, County of Ventura, case number

CR22776, a sex conviction in which a minor was the victim, and was sentenced to 18 years imprisonment.

WAIVER OF CONSTITUTIONAL RIGHTS

11. By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or

Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF DNA TESTING

12. Defendant has been advised that the government has in its possession the following items of physical evidence that could be subjected to DNA testing: All items that were seized from defendant's home in Siem Reap, Cambodia, by the Cambodian National Police, on February 2 and 3, 2009, and that have not been returned to defendant. Defendant understands that the government does not intend to conduct DNA testing of any of these items. Defendant understands that, before entering guilty pleas pursuant to this agreement, defendant could request DNA testing of evidence in this case. Defendant further understands that, with respect to the offenses to which defendant is pleading guilty pursuant to this agreement, defendant would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding defendant's right to request DNA testing, defendant voluntarily gives up that right with respect to both the specific items listed above and any other items of evidence there may be in this case that might be amenable to DNA testing. Defendant understands and acknowledges that by giving up this right, defendant is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type. Defendant further understands and acknowledges that by giving up this right, defendant will never have another opportunity to have the evidence in this case,

whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offenses to which defendant is pleading guilty.

SENTENCING FACTORS

13. Defendant understands that the Court is required to consider the factors set forth in 18 U.S.C. §§ 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), in determining defendant's sentence. Defendant further understands that the Sentencing Guidelines are advisory only.

14. Defendant and the USAO agree and stipulate to the following applicable Sentencing Guidelines factors:

**Count One** (Victim M.T., 12 years of age):

| | | | |
|---|---|---|---|
| Base Offense Level | : | 24 | U.S.S.G. § 2G1.3(a)(4) |
| Victim in defendant's custody, care, or supervisory control | : | +2 | U.S.S.G. § 2G1.3(b)(1)(B) |
| Sexual contact | : | +2 | U.S.S.G. § 2G1.3(b)(4)(A) |
| Offense Level | : | 28 | |

**Count Three** (Victim T.S., 12 years of age):

| | | | |
|---|---|---|---|
| Base Offense Level | : | 24 | U.S.S.G. § 2G1.3(a)(4) |
| Victim in defendant's custody, care, or supervisory control | : | +2 | U.S.S.G. § 2G1.3(b)(1)(B) |
| Sexual contact | : | +2 | U.S.S.G. § 2G1.3(b)(4)(A) |
| Offense Level | : | 28 | |

**Adjustments**

| | | | |
|---|---|---|---|
| Multiple Count Adjustment | : | +2 | U.S.S.G. § 3D1.4 |

| | | | |
|---|---|---|---|
| Early Acceptance of Responsibility | : | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | | 27 | |

The parties agree not to seek, argue, or suggest that any other specific offense characteristics, adjustments, or departures be imposed. Notwithstanding the above, the parties agree that, pursuant to U.S.S.G. § 4B1.5(a) (Repeat and Dangerous Sex Offender Against Minors), defendant's total offense level, after a three-level reduction for early acceptance of responsibility, is 31, and his criminal history category is the greater of V or the category determined under Chapter Four, Part A.

15. Except as set forth in paragraph 14 above, there is no agreement as to defendant's criminal history or criminal history category.

16. Defendant and the USAO agree that an appropriate disposition of this case is that the Court depart from the advisory guideline range to impose a sentence of: 120 months imprisonment; a 5-year period of supervised release with the terms and conditions set forth in paragraph 23 below; a $200 special assessment; and restitution in an amount to be determined by the Court at the time of sentencing but not to exceed $30,000, to be placed in a fund for the minor victims with whom defendant engaged in illicit sexual conduct, which includes but is not limited to the minor victims in counts one and three of the Indictment. The parties also agree that no prior imprisonment (other than credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under U.S.S.G. § 5G1.3. The parties also agree that the government and/or the probation office may

petition the court under 18 U.S.C. § 3583(e)(2) to extend the term of supervised release.

17. The Court will determine the facts and calculations relevant to sentencing and decide whether to agree to be bound by this agreement. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, and (b) correct any and all factual misstatements relating to the calculation of the sentence.

18. Defendant understands and agrees that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). So long as defendant does not breach the agreement, defendant may withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement. The USAO may, in its discretion, withdraw from this agreement and render it null and void if the defendant breaches this agreement or the Court refuses to be bound by this agreement.

DEFENDANT'S OBLIGATIONS

19. Defendant agrees that he will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay.

g) Pay restitution as set forth in this agreement, in an amount to be determined by the Court.

THE USAO'S OBLIGATIONS

20. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) At the time of sentencing to move to dismiss the remaining count of the indictment as against defendant.

c) Not to charge defendant under Title 18, United States Code, Section 2260A with committing a felony offense involving a minor under Section 2243 while required by law to register as a sex offender, which charge would add a mandatory 10-year consecutive term to any sentence imposed for the offenses to which defendant is pleading guilty. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

BREACH OF AGREEMENT

21. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty pleas, and the USAO will be relieved of all of its obligations under the agreement.

22. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that the applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; ii) the stipulated factual basis statement in this agreement; and iii) any evidence derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant

shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

23. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that the sentence is that agreed to in paragraph 16 above. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Notwithstanding the foregoing, defendant retains the ability to appeal the conditions of supervised release imposed by the court, with the exception of the following:

a. conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court;

b. The defendant shall use only those computers and computer-related devices, screen user names, passwords, email accounts, and internet service providers (ISPs), as approved by the Probation Officer. Computers and computer-related devices include, but are not limited to, personal computers, personal data assistants (PDAs), internet appliances, electronic games, and cellular telephones, as well as their peripheral equipment, that can access, or can be modified to access, the internet,

electronic bulletin boards, and other computers, or similar media;

c. All computers, computer-related devices, and their peripheral equipment, used by the defendant, shall be subject to search and seizure and the installation of search and/or monitoring software and/or hardware, including unannounced seizure for the purpose of search. The defendant shall not add, remove, upgrade, update, reinstall, repair, or otherwise modify the hardware or software on the computers, computer-related devices, or their peripheral equipment, nor shall he/she hide or encrypt files or data without prior approval of the Probation Officer. Further, the defendant shall provide all billing records, including telephone, cable, internet, satellite, and the like, as requested by the Probation Officer;

d. The defendant shall register with the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the Probation Officer. The defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment/placement on probation;

e. The defendant shall participate in a psychological counseling and/or psychiatric treatment and/or a sex offender treatment program, as approved and directed by the Probation Officer. The psychological counseling and/or psychiatric treatment and/or a sex offender treatment program may include inpatient treatment at the order of the Court. The defendant shall abide by all rules, requirements, and conditions of such program, including submission to risk assessment evaluations and

physiological testing, such as polygraph and Abel testing. The Probation Officer shall disclose the presentence report and/or any previous mental health evaluations or reports to the treatment provider;

f. As directed by the Probation Officer, the defendant shall pay all or part of the costs of treating the defendant's psychological/psychiatric disorder(s) to the aftercare contractor during the period of community supervision, pursuant to 18 U.S.C. § 3672. The defendant shall provide payment and proof of payment, as directed by the Probation Officer;

g. The defendant shall not possess any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or describing "sexually explicit conduct," as defined at 18 U.S.C. § 2256(2). The condition prohibiting defendant from possessing materials describing "sexually explicit conduct" does not apply to materials necessary to and used for legal proceedings in this or another criminal prosecution against defendant, including a collateral attack or appeal, or to materials prepared or used for the purposes of defendant's court-mandated sex offender treatment;

h. The defendant shall not possess any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or describing child pornography, as defined in 18 U.S.C. § 2256(8). The condition prohibiting defendant from possessing materials describing child pornography does not apply to materials necessary to and used for

legal proceedings in this or another criminal prosecution against defendant, including a collateral attack or appeal, or to materials prepared or used for the purposes of defendant's court-mandated sex offender treatment;

i. The defendant shall not own, use or have access to the services of any commercial mail-receiving agency, nor shall he/she open or maintain a post office box, without the prior approval of the Probation Officer;

j. The defendant shall not frequent, or loiter, within 100 feet of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by persons under the age of 18;

k. The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18, except: (a) in the presence of the parent or legal guardian of said minor; and (b) on the condition that the defendant notify said parent or legal guardian of his/her conviction in the instant offense/prior offense. This provision does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom the defendant must deal with in order to obtain ordinary and usual commercial services

l. The defendant shall not affiliate with, own, control, volunteer and/or be employed in any capacity by a business and/or organization that causes him/her to regularly contact persons under the age of 18;

m. The defendant shall not affiliate with, own, control, and/or be employed in any capacity by a business whose principal product is the production and/or selling of materials

depicting and/or describing "sexually explicit conduct," as defined at 18 U.S.C. § 2256(2);

n. The defendant's employment shall be approved by the Probation Officer, and any change in employment must be pre-approved by the Probation Officer. The defendant shall submit the name and address of the proposed employer to the Probation Officer at least 10 days prior to any scheduled change;

o. The defendant shall not reside within direct view of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by persons under the age of 18. The defendant's residence shall be approved by the Probation Officer, and any change in residence must be pre-approved by the Probation Officer. The defendant shall submit the address of the proposed residence to the Probation Officer at least 10 days prior to any scheduled move.

24. The USAO gives up its right to appeal any sentence imposed by the Court, including any order of restitution, provided that the sentence is that agreed to in paragraph 16 above.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

25. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all of their

obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

COURT NOT A PARTY

26. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations.

NO ADDITIONAL AGREEMENTS

27. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court. Defendant has signed a declaration (the "Declaration") regarding his representation in this case by attorney Todd L. Melnik. The Declaration is attached to and incorporated into this Agreement.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28. The parties agree and stipulate that this Agreement and the attached Declaration will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement and Declaration had been read into the record of the proceeding.

///

///

///

///

///

///

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANDRÉ BIROTTE JR.
United States Attorney

Patricia A. Donahue 5-14-2010

PATRICIA A. DONAHUE Date
DANIEL A. SAUNDERS
Assistant United States Attorneys

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

MAY 18, 2010

JACK LOUIS SPORICH Date
Defendant

I am Jack Louis Sporich's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the

consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

5-14-10

ALEX R. KESSEL
Counsel for Defendant
Jack Louis Sporich

Date

**DECLARATION OF JACK LOUIS SPORICH**

I, Jack Louis Sporich, hereby declare as follows:

1. I have been charged in the matter entitled United States v. Jack Louis Sporich, No. CR 09-934-PSG. I am represented in that matter by Alex R. Kessel, Todd L. Melnik, and Alan S. Yockelson.

2. I have been advised that the government has told my counsel Mr. Kessel that the government is investigating possible witness tampering and obstruction of justice in my case. I have further been advised that the government has told my counsel Mr. Kessel that a witness has indicated that my counsel Mr. Melnik might have been involved in trying to induce witnesses, including minors, to change their testimony.

3. Mr. Kessel has advised me of the possible conflicts of interest and ramifications that could arise from having Mr. Melnik represent me in plea discussions with the government and at trial, including the following:

a. Because Mr. Melnik is aware that the government is investigating his activities in connection with my case, his advice to me regarding whether or not to plead guilty to the charges could potentially be influenced by a desire to prevent further investigation of his own conduct.

b. If Mr. Melnik represents me at trial and one or more witnesses would testify that Mr. Melnik improperly influenced, or sought to influence, their testimony or the testimony of others in my case, then Mr. Melnik's trial strategy (including the decision regarding what witnesses to call and what cross-examination to conduct of government witnesses) could

potentially be influenced by a desire to avoid testimony that would be personally or professionally damaging to him, rather than by what would serve my best interests.

c. If Mr. Melnik represents me at trial and the government introduces evidence that Mr. Melnik improperly influenced, or sought to influence, their testimony or the testimony of others in my case, that evidence could negatively impact my defense to the allegations in the indictment and could negatively impact the jury's view of me and of my defense, including the credibility of any defense witnesses.

d. If Mr. Melnik represents me at trial and the government introduces evidence that Mr. Melnik improperly influenced, or sought to influence, their testimony or the testimony of others in my case, the jury could perceive Mr. Melnik as less credible in his presentation at trial, including any presentation that he may give in opening statement, closing argument, direct and cross-examination of witnesses, and raising objections.

e. If the government introduces evidence at trial that Mr. Melnik improperly influenced, or sought to influence, the testimony of any witness or potential witness, then Mr. Melnik could conceivably be called by either side to testify as a witness at trial. Should that occur, it could negatively impact my defense to the allegations in the indictment and could negatively impact the jury's view of me and of my defense, including the credibility of any (other) defense witnesses.

f. If the government introduces evidence at trial that Mr. Melnik improperly influenced, or sought to influence,

the testimony of any witness or potential witness, and Mr. Melnik does not testify at trial because of his role as my counsel, it could leave the government's evidence unrebutted and thereby negatively impact my defense to the allegations in the indictment.

4. I understand the advice that Mr. Kessel has given me regarding the issues that might arise should Mr. Melnik represent me in plea discussions and/or at trial, including all of the aforementioned ways in which a conflict of interest might arise in such representation. Understanding the potential ramifications of having Mr. Melnik represent me, I wish to have Mr. Melnik continue to represent me in my case, including in plea discussions and at trial. Therefore, I knowingly and voluntarily waive any and all actual or perceived conflicts of interest that might arise from this representation. I also knowingly and voluntarily waive any and all claims that might be raised, including any claims for post-conviction relief, based on any actual or perceived conflict of interest resulting from Mr. Melnik's representation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 19 day of April, 2010, at Los Angeles, California.

JACK LOUIS SPORICH

I am Jack Louis Sporich's attorney. Without the presence or participation of my co-counsel Todd Melnik, I have met with my client and have carefully discussed every part of the above declaration with him. I have specifically advised him of and discussed each of the potential conflicts of interest set forth in paragraph 3. My client has advised me that it is his desire to waive any actual or perceived conflict of interest so that Mr. Melnik can continue to represent him in this case, including in plea discussions and at trial. To my knowledge, my client's decision to make such a waiver is an informed and voluntary one.

ALEX R. KESSEL
Counsel for Defendant
Jack Louis Sporich

4-19-10
Date

(MON)APR 19 2010 15:37/ST.15:36/No.7360508953 P 2