LAW OFFICE OF KIANA SLOAN-HILLIER
Kiana Sloan-Hillier, SBN No. 209887
1901 Avenue of the Stars, Suite 615
Los Angeles, CA 90067
Tel: 310/556-1911
Fax: 310/861-1463
kianahillier@yahoo.com

Attorney for JACK SPORICH

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  CR 09-934-PSG |
| Plaintiff, | NOTICE OF MOTION; MOTION TO DISMISS INDICTMENT FOR LACK OF SUBJECT MATTER JURISDICTION |
| vs. | |
| JACK SPORICH, | Date: September 28, 2015 |
| Defendant. | Honorable Philip S. Gutierrez |

TO THE UNITED STATES OF AMERICA BY AND THROUGH ITS
REPRESENTATIVES, PATRICIA DONAHUE, ASSISTANT UNITED STATES
ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that on September 28, 2015, or as soon thereafter
as counsel may be heard in the Courtroom of the Honorable Philip S. Gutierrez,
defendant Jack Sporich will move for an order of dismissal based on lack of
subject matter jurisdiction over defendant.

This Motion is based upon this Notice, the attached Memorandum of Points
and Authorities, the pleadings, all reports on file in this action and on such further

1   oral and/or documentary evidence as may be presented at the hearing on this

2   motion.

3   Dated: August 31, 2015                    Respectfully submitted by:

4

5                                             _____/s_____
                                              Kiana Sloan-Hillier, Esq.
6                                             Counsel for Jack Louis Sporich

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

Introduction

This Court lacked subject matter jurisdiction over defendant's conduct because the statute under which he was charged and pleaded guilty, 18 U.S.C. § 2423(c), which prohibits engaging in illicit sexual conduct after traveling in foreign commerce, is facially unconstitutional under the Foreign Commerce Clause.[1] Punishing sexual abuse of minors is an admirable and urgent task, but it must be done within the bounds of the Constitution. Sections 2423(c) falls outside those constitutional parameters.

Congress lacked the power to enact this statute under the Foreign Commerce Clause because the statute does not regulate the use of the channels of foreign commerce, the instrumentalities of foreign commerce or things or persons in foreign commerce, or activities having a substantial effect on foreign commerce. Congress does not have a plenary police power that enables it to regulate all of a citizen's downstream conduct abroad simply because the citizen had to travel in foreign commerce at some point to reach the foreign destination.

Even if the statute is facially constitutional, it is unconstitutional as applied to Mr. Sporich, as his conduct was non-commercial in nature. He did not pay for sex. The nexus between his travel in foreign commerce and the illicit sexual conduct is too weak to confer jurisdiction on the courts of the United States. Further, he was no longer in the stream of foreign commerce once he arrived and remained in Cambodia.

Finally, as raised in defendant's motion to withdraw his guilty pleas, even if the Court finds that the statute is constitutional, the version of section 2423(c) in force during the time period alleged in the indictment does not apply to defendant,

---

[1]  Subject matter jurisdiction may be raised at any time and is non-waivable. *United States v. Cotton*, 535 U.S. 625, 630 (2002)("subject matter jurisdiction . . . can never be forfeited or waived").

1

1    who was at all times relevant to the indictment, a resident of Cambodia.

2    Argument

3        The federal government has broad powers to act under the Foreign

4    Commerce Clause and these powers are generally considered more extensive than

5    the powers afforded under the Interstate Commerce Clause. *Japan Line, Ltd. v.*

6    *County of Los Angeles*, 441 U.S. 434, 448 (1979). "[However] its authority in the

7    foreign sphere is not different in kind. In both spheres, Congress is only authorized

8    'to regulate Commerce,' art. I, § 8, cl. 3, and not those activities that are

9    fundamentally divorced from commerce." *Clark*, at 1118 (9th Cir. 2006).

10   "The Constitution cannot be interpreted according to the principle that the end

11   justifies the means. The sexual abuse of children abroad is despicable, but we

12   should not, and need not, refashion our Constitution to address it. . . . Article I,

13   section 8, clause 3, while giving Congress broad authority over our commercial

14   relations with other nations, is not a grant of international police power." *United*

15   *States v. Clark,* 435 F.3rd 1100, 1117 (9th Cir. 2006) (Ferguson, J., dissenting).

16       While the Supreme Court has yet to develop an extensive framework for the

17   application of the Foreign Commerce Clause to Congress's ability to regulate

18   citizens' conduct abroad in the same way it has developed a comprehensive

19   framework for the Interstate Commerce Clause, courts have consistently held that

20   application of the Foreign Commerce Clause requires a jurisdictional nexus "with"

21   the United States. *United States v. Pendleton*, 658 F.3d 299, 306-07 (3d Cir.

22   2011) (collecting cases). Some courts have used Interstate Commerce Clause

23   principles in analyzing the application of the Foreign Commerce Clause but others

24   have concluded that "this undertaking can feel like jamming a square peg into a

25   round hole." *United States v. Clark*, *supra*, 1103.

26       Under the Interstate Commerce Clause, Congress may regulate: (1) the use

27   of the channels of interstate commerce, (2) the instrumentalities of interstate

28   commerce, or things or persons in interstate commerce, and (3) activities having a

substantial effect on interstate commerce. *United States v. Morrison*, 529 U.S. 598,607 (2000). But 18 U.S.C. § 2423(c) can never be applied in a valid manner because it exceeds Congress's authority under the Foreign Commerce Clause. U.S. Const. art. I, § 8, cl. 3.

Section 2423(c) cannot survive a facial constitutional challenge under any standard. The statute does not regulate (1) the use of the channels of foreign commerce, (2) the instrumentalities of foreign commerce, or things or persons in foreign commerce, and (3) activities having a substantial effect on foreign commerce.[2]

First, the statute does not regulate the use of the channels of foreign commerce because the statute does not require an unlawful purpose or motive when the accused travels abroad. Another subsection of the statute, § 2423(b), prohibits travel in foreign commerce "for the purpose of' engaging in" illicit sexual conduct, leaving § 2423(c) as a fallback subsection for the prosecution to use where it cannot prove intent in connection with the use of foreign commerce. Congress undoubtedly has the power to regulate the use of the channels of foreign commerce for a criminal purpose, which it did when it enacted § 2423(b). However, the Foreign Commerce Clause does not give Congress plenary power over offenses committed by United States citizens abroad where there was no criminal use of the

---

[2]

  "... an overbroad interpretation of the Foreign Commerce Clause allows the government to intrude on the liberty of individual citizens. And that seems as least as wrong as a reading of the Commerce Clause that allows the government to intrude on the States. See U.S. Const. amend. X ...
  ... Congress's power over regulating foreign commerce is "exclusive," ... but only when Congress acts "within its compass." [citation] That means the The power to regulate commerce with foreign countries may be exclusive, which is all *Japan Line* establishes. But that says nothing about what commerce means. ... we doubt that Congress has regulated commerce here, much less commerce with a foreign country." *United States v. Al-Maliki*, 787 F.3d 784 (6th Cir. 2015) [petition for certiorari filed Jul. 10, 2015, as to whether the district court committed plain error]

channels of foreign commerce. Instead of criminalizing the act of traveling in foreign commerce for the purpose of engaging in illicit sexual conduct or the wrongful use of the channels of foreign commerce, § 2423(c) prohibits future conduct in a foreign country that has no connection to the act of traveling except for the fact that the travel necessarily had to occur at some point prior to the prohibited conduct. "The mere act of boarding an intentional flight, without more, is insufficient to bring all of [a defendant's] downstream activities that involve an exchange of value within the ambit of Congress's Foreign Commerce power." *Clark*, 435 F.3d at 1120 (Ferguson, J., dissenting).

Second, § 2423(c) does not regulate the instrumentalities of foreign commerce or people or things in foreign commerce. Foreign commerce means to or from the United States. Once the United States citizen completes the journey and arrives abroad, the foreign commerce ceases. Thus, in *United States v. Weingarten, 632 F .3d 60* (2d Cir. 2011 ), the Second Circuit held that § 2423(b) "did not criminalize travel occurring wholly between two foreign countries and without any territorial nexus to the United States." 632 F.3d at 71. A United States citizen is not perpetually in "foreign commerce" after leaving the United States and the "foreign commerce" must cease at some point. See *id*. One logical stopping point for the cessation of the use of the channels of foreign commerce is when the traveler clears customs in the foreign destination. While the case law provides little guidance and there may be other logical stopping points, a traveler must cease to use the instrumentalities of foreign commerce at some point after arriving at the foreign destination.

Finally, illicit sexual conduct committed overseas does not have a substantial impact on foreign commerce. Just as violence against women, *Morrison*, 529 U.S. at 613-14, and carrying a gun in a school zone, *United States v. Lopez*, 514 U.S. 549, 560-61 (1995), do not involve economic activity and do not substantially affect interstate commerce, engaging in illicit sexual conduct overseas does not

1   involve economic activity and does not substantially affect foreign commerce. If

2   18 U.S.C. § 2423(c) were constitutional, Congress could criminalize jaywalking,

3   speeding, viewing a bullfight, smoking marijuana, violence against women,

4   carrying a gun near a school, or almost any other conduct committed by United

5   States citizens abroad simply because the citizen had to travel in foreign commerce

6   at some point to reach the foreign destination.

7       In *Morrison*, which involved the constitutionality of the Violence Against

8   Women Act ("VAWA") on a "substantially affects" rationale under the Interstate

9   Commerce Clause, the Court noted that "in those cases where we have sustained

10  federal regulation of intrastate activity based upon the activity's substantial effects

11  on interstate commerce, the activity in question has been some sort of economic

12  endeavor." 529 U.S. at 611; see also *id*. at 613 ("[T]hus far in our Nation's history

13  our cases have upheld Commerce Clause regulation of intrastate activity only

14  where that activity is economic in nature."). It was therefore "clear," according to

15  the Supreme Court, that the VAWA did not qualify on a "substantially affects"

16  rationale in primary part because "[g]ender-motivated crimes of violence are not,

17  in any sense of the phrase, economic activity." *Id*. at 613.

18      In the 2-1 decision in *Clark*, the Ninth Circuit held that it was "the

19  combination of Clark's travel in foreign commerce and his conduct of an illicit

20  commercial sex act in Cambodia shortly thereafter puts the statute squarely within

21  Congress's Foreign Commerce Clause authority." *Id*. at 1116. The Ninth Circuit

22  did not hold that Clark's travel in foreign commerce by itself was sufficient to

23  establish subject matter jurisdiction. Thus, *Clark* is distinguishable from the case at

24  bar in one important respect - - in *Clark* the defendant paid for sex abroad while

25  Mr. Sporich did not.

26      Citizenship alone does not provide a sufficient basis for jurisdiction over Mr.

27  Sporich's alleged conduct in Cambodia. To find otherwise would essentially find

28  that Congress has plenary police power over all United States citizens abroad, a

5

1   power not contemplated by the Constitution. The Foreign Commerce Clause is not

2   to be used as a constitutional basis to criminalize all wrongful conduct committed

3   abroad. There is no precedent for such a plenary international police power and

4   such a power would render any limit to the powers afforded Congress under the

5   Foreign Commerce Clause meaningless. There is no indication that the Founders

6   intended the Foreign Commerce Clause to be a blank check to regulate citizens'

7   conduct abroad.

8       "In all criminal prosecutions, the accused shall enjoy the right to a speedy

9   and public trial, by an impartial jury of the State and district wherein the crime

10  shall have been committed . . ." U.S. Constitution, Sixth Amendment.

11      Regardless of whether the Interstate Commerce Clause framework applies,

12  the Foreign Commerce Clause is not a constitutional basis to reach Mr. Sporich's

13  alleged non-commercial illicit sexual conduct in Cambodia. Since Mr. Sporich is

14  not accused or charged with engaging in commercial sexual conduct, the only basis

15  for the application of the United States' laws is that he had to travel in foreign

16  commerce to reach Cambodia.

17      18 U.S.C. § 2423(c) does not require proof that Mr. Sporich engaged in

18  foreign commerce for the purpose of or with the intent to engage in illicit sexual

19  conduct. Thus, there is no meaningful nexus between the jurisdictional component

20  and the offense conduct. There is no basis for "once in commerce, always in

21  commerce" for individuals as opposed to the products of commerce, such as guns.

22  Foreign commerce simply means traveling to or from the United States. See

23  *Weingarten*, at 68.

24      The Foreign Commerce Clause did not give Congress the power to punish

25  the conduct at issue here. In contrast to 18 U.S.C. 2423 §§ (a) and (b), one

26  subsection prohibiting traveling in interstate commerce with the purpose of

27  engaging in illicit sexual conduct with a minor, and the other subsection

28  prohibiting moving a minor through interstate commerce for the illicit purpose,

2423(c) refers only to a citizen who at some point traveled in interstate commerce, with no criminal intent whatsoever required, and at some point thereafter, violated the law by committing a noncommercial act.

To uphold §§ 2423(c) under the Foreign Commerce Clause would be a radical move and sets a dangerous precedent. It would contradict not only constitutional text, structure, and history, but also the very notion of a government of limited and enumerated powers. It would effectively arrogate to Congress plenary police power over any U.S. citizen or permanent resident who has ever traveled in foreign commerce.

A.   The Version of Section 2423(c) in Force During the Time Period Alleged in the Indictment Does Not Apply to Mr. Sporich [3]

The version of section 2423(c) in force during the time period alleged in the indictment does not apply to Mr. Sporich because he was no longer a traveler to Cambodia, but a resident there. All subsequent travel was from his home in Cambodia to the United States for a day or two, and then back home to Cambodia. He resided with his common law wife, a Cambodian national, and they lived in a home built by Mr. Sporich on land procured by him. Mr. Sporich had Cambodian bank accounts and Cambodian driver license. He had a family book registration, per the local Cambodian law,[4] and had entered into legal agreements with regard to the land upon which his home was built. As a retired man, defendant had no employment related ties to the United States. Although he owned a residence in Arizona that had been left to him upon the death of his parents, he only made

[3]This claim was raised in defendant's Motion to Withdraw his Guilty Plea as a fair and just reason, and is incorporated by reference herein. While this issue was denied by the Court, defendant has included it in the instant motion to properly preserve the issue for appellate review.

[4]The Family Books are family records that are written in a binder type book, which is normally kept with the family or village records keeper. Each Cambodian family traditionally has a Family Book to record births, marriages, deaths, etc., of the immediate family.

7

1  occasional brief trips to the United States to facilitate the transport of his personal
2  property back to Cambodia, bringing empty suitcases with him from Cambodia to
3  the United States.

4      The fact that Mr. Sporich was a resident of Cambodia is also supported by
5  the government's recitation of defendant's travel contained in the affidavit for the
6  arrest warrant, conceding that Mr. Sporich spent the vast majority of his time in the
7  far east, and in Cambodia in particular, and made only brief trips back to the
8  United States. In fact, it is undisputed that from May 2006 until the time of his
9  arrest in Cambodia, Mr. Sporich had spent only forty-one non-consecutive days in
10 the United States.

11     The statute's failure to address the conduct of expatriates prior to March
12 2013 amendment is identified in the sentencing commission's November 2014
13 amendments to the sentencing guidelines, where the commission refers to the
14 Trafficking Victims Protection Reauthorization Act, "a provision expanding
15 subsection (c) of 18 U.S.C. § 2423, which had previously prohibited U.S. citizens
16 or permanent residents who traveled abroad from engaging in illicit sexual
17 conduct. Only after the March 2013 amendment does the same prohibition now
18 apply to those individuals who reside temporarily or permanently in a foreign
19 country and engage in such conduct."

20     Moreover, the Summary to H.R.898 — 113th Congress (2013-2014), which
21 amended the statute, describes the purpose of the amendment (in relevant part), to
22 expand the prohibition against foreign travel and engagement in illicit sexual "to
23 include travel affecting foreign commerce even if an individual is residing
24 temporarily or permanently in a foreign jurisdiction."

25     The March 2013 amendment to the statute, which is not retroactive, adds a
26 new category of persons liable under 18 U.S.C. § 2423, subsection (c), by
27 including as a category citizens or resident aliens who establish residency once
28 their travel is completed. It was not until the amendment that the umbrella of

liability under 2423 (c), opened to include persons like Mr. Sporich who had established residency in a foreign country.

Article 1, Sec 9 of the Constitution prohibits the passage of Ex Post Facto laws.  "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."  See *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2415, 111 L. Ed. 2d 30 (1990).

Conclusion

18 U.S.C. §§ 2423(c), both on its face and as applied in this case, constitutes an unconstitutional exercise of Congressional power to criminalize noncommercial exploitation abroad. As such, defendant requests that this Court order that the Indictment be dismissed.

Furthermore, the Indictment should be dismissed based on the 2013 amendment of section 2423(c), the statute in force during the time period alleged in the indictment does not apply to Mr. Sporich because he was no longer a traveler to Cambodia, but a resident there.

_____/s_____
Kiana Sloan-Hillier, Esq.
Counsel for Defendant Sporich

CERTIFICATE OF SERVICE

On August 31, 2015,  I served the following documents:

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

on the interested parties in this action by sending an electronic copy to:

AUSA Patricia Donahue

312 North Spring Street

Los Angeles, CA 90012

This certificate was executed on August 31, 2015, at Los Angeles, CA 90067. I declare under penalty of perjury pursuant to the laws of the United  States of  America that the foregoing is true and correct.


_____/S/_____
Kiana Sloan-Hillier