1           UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,              )
                                           )
6                    Plaintiff,            ) CASE NO.
                                           ) CR 09-00934-PSG
7           vs.                            )
                                           )
8   JACK LOUIS SPORICH,                    )
                                           )
9                    Defendant.            )
    _____)
10  JACK LOUIS SPORICH,                    )
                                           )
11                   Petitioner,           ) CASE NO.
                                           ) CV 18-08271-PSG
12          vs.                            )
                                           )
13  UNITED STATES OF AMERICA,              )
                                           )
14                   Respondent.           )
    _____)
15

16

17            REPORTER'S TRANSCRIPT OF PROCEEDINGS

18               TUESDAY, NOVEMBER 5, 2019

19                     10:06 A.M.

20               LOS ANGELES, CALIFORNIA

21

22

23   _____

24            MAREA WOOLRICH, CSR 12698, CCRR
              FEDERAL OFFICIAL COURT REPORTER
              350 WEST FIRST STREET, SUITE 4311
25            LOS ANGELES, CALIFORNIA 90012
                 mareawoolrich@aol.com


                  UNITED STATES DISTRICT COURT

1        **APPEARANCES OF COUNSEL:**

2

3    **FOR PLAINTIFF/RESPONDENT:**

4       OFFICE OF THE UNITED STATES ATTORNEY
        BY:  PATRICIA DONAHUE
5       Assistant United States Attorney
        312 North Spring Street
6       Los Angeles, California 90012

7

8    **FOR DEFENDANT/PETITIONER:**

9       LAW OFFICE OF KIANA SLOAN-HILLIER
        BY:  KIANA SLOAN-HILLIER
10      11600 Washington Place, Suite 116A
        Los Angeles, California 90066

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1                            **I N D E X**

2                    TUESDAY, NOVEMBER 5, 2019

3

4         ----------------------------------------------------

5              **CHRONOLOGICAL INDEX OF WITNESSES**

6

7

   **WITNESS**                                        **PAGE**

8

9         DIRECT EXAMINATION BY MS. SLOAN-HILLIER        21
          CROSS-EXAMINATION BY MS. DONAHUE              23
10        REDIRECT EXAMINATION BY MS. SLOAN-HILLIER     27

11

12        ----------------------------------------------------

13

14                       **INDEX OF EXHIBITS**

15

                       RECEIVED INTO EVIDENCE
16

17   EXHIBIT NOS. B, C, & D                             19
     EXHIBIT NOS. 1 & 2                                 19
18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

4

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, NOVEMBER 5, 2019

 2                          10:06 A.M.

 3                            -oOo-

 4

 5              THE CLERK:  Calling Civil 18-8271 and Criminal

 6   09-934, Jack Louis Sporich versus United States of America.

 7              Counsel, please state your appearances.

 8              MS. DONAHUE:  Good morning, Your Honor.  Patricia

 9   Donahue on behalf of the United States.

10              THE COURT:  Good morning.

11              MS. SLOAN-HILLIER:  Good morning, Your Honor.

12   Kiana Sloan-Hillier on behalf of Mr. Sporich who is appearing

13   via video link.

14              THE COURT:  Good morning.

15              Before we get to the evidentiary matters, I'd like

16   to have some argument or discussion as it relates to the

17   Court's legal conclusions.

18              First, Ms. Donahue, I want to talk about the plea

19   agreement first.  If you would proceed to the lectern.

20              MS. DONAHUE:  Yes, Your Honor.

21              THE COURT:  Here's the -- we'll talk about the

22   language of the plea agreement in a moment.  There's an

23   argument made by the petitioner that basically says that the

24   waiver is unenforceable if it violates the Constitution.

25   That's if the convicted person is actually innocent.
```

1              How do we deal with that point, or what is your

2     response to that point?

3              MS. DONAHUE:   The waiver has specific exceptions

4     which we believe that the defendant's current claim does not

5     fall within the exception to those waivers.

6              The response to the actual innocence argument is

7     that he is not.  In the *Pepe* case, the Ninth Circuit

8     interpreted 18 U.S.C. 2423(c) in a more restrictive fashion

9     than it had previously in *Clark*.  The issue in *Pepe* was not a

10    constitutional issue.  It was a matter of statutory

11    interpretation.

12             In fact, in *Pepe* there was a constitutional issue.

13    The defendant had challenged the statute as violating the

14    Commerce Clause.  The Ninth Circuit did not reach that

15    argument.  The Ninth Circuit opinion is based only on statutory

16    interpretation.  And what the Ninth Circuit said in *Pepe* was

17    that the travels in foreign commerce means that the defendant

18    must have engaged in the sexual acts while he was traveling.

19             On this record, the government in this case, the

20    government would certainly argue that the nine trips to

21    Southeast Asia that the defendant took between his release --

22    essentially his release from state custody and when he was

23    arrested in Cambodia demonstrate that he was traveling in

24    foreign commerce at the time that he was engaging in the sex

25    acts with the minor boys in Cambodia.

1          His argument, which is absolutely much stronger post

2   *Pepe* than it was is that, no, he wasn't traveling.  He was

3   residing in Cambodia.  That is his argument.  The government's

4   position is that he did not move to Cambodia.  He went to

5   Cambodia, and he went back and forth continuing to take full

6   advantage of his U.S. citizenship, traveling on his U.S.

7   passport, maintaining his residence in Arizona.

8          So he is not factually innocent of the 18 U.S.C.

9   2423(c) charge.  He has a better argument based on subsequent

10  case law, the Ninth Circuit's interpretation in *Pepe*.  But

11  that's not actual innocence.

12          THE COURT:  I guess my question is maybe a little --

13  I appreciate the response -- is more narrow.  So what you are

14  arguing when you look at the plea agreement -- and I think

15  there's a problem with the Court's initial tentative ruling

16  because there's two problems, and I'll let both sides argue

17  this point.

18          When you look at the plea agreement, it refers to at

19  the last phrase "explicitly retroactive change in the

20  applicable sentencing guidelines, sentencing statutes, or

21  statutes of conviction."

22          And I think the Court gave short shrift to

23  explicitly retroactive as modifying all guidelines, sentencing

24  statutes, and statutes of convictions and also too may have

25  conflated "statute" with "rules."  And I think the order -- I

1    think interchanges rules and statutes in a sloppy way.

2         But I guess my point is that let's say the plea

3    agreement is a -- I guess my question was more narrow.  Let's

4    say I go back and change my mind and I say the plea agreement

5    is a -- on its face is a waiver.  Can you still get around the

6    waiver though of a conviction violates the Constitution because

7    of actual innocence?  I guess that was my narrow question.  Can

8    you get around the plea agreement waiver if someone has a,

9    quote, constitutional challenge because they are actually

10   factually innocent?  That, I guess -- does that make sense?

11   Probably not.

12        MS. DONAHUE:  The Court's question is whether --

13        THE COURT:  If you find the plea agreement waiver to

14   be valid -- all right?  This isn't an explicitly retroactive

15   change in the guidelines, change in the sentencing statutes,

16   changes in the statutes of conviction.  If you find that the

17   terms of the plea agreement -- it's a valid waiver.  Can you

18   still get around the valid waiver -- and it seems that's what

19   the petitioner is arguing.  That the waiver is unenforceable

20   because it violates the Constitution because he's actually

21   innocent.  I guess that's more my question.

22        MS. DONAHUE:  And our -- certainly our position is

23   that he's not --

24        THE COURT:  Right.

25        MS. DONAHUE:  -- factually innocent.  Had the

```
 1   Ninth Circuit struck down the statute --
 2              THE COURT:  Sorry to interrupt.  If you were
 3   right -- so let's say -- here's my point.  If the plea
 4   agreement is on all fours, okay?  It's a valid waiver.  But
 5   then the defense says it's unenforceable.  So at that point in
 6   time you say no hearing, no evidentiary hearing.  We don't go
 7   any further.  It's a valid waiver.
 8              But I guess the point that I'm asking is do we get
 9   to a hearing because it's unenforceable because -- I guess
10   that's my question.
11              MS. DONAHUE:  I see.  So the -- we submit that the
12   waiver is enforceable.  And to Your Honor's hypothetical, say
13   the Ninth Circuit had in the *Pepe* case had struck down the
14   statute as unconstitutional, say the Ninth Circuit had said
15   this statute violates -- had agreed with the other defense
16   argument that this statute violates the Commerce Clause,
17   therefore it is unconstitutional, this is not a crime.
18              THE COURT:  *Pepe* didn't do that.  It clarified.
19              MS. DONAHUE:  Yes.  *Pepe* absolutely did not do that.
20   But if *Pepe* had, that would have been a constitutional ruling,
21   and the waiver likely would not encompass that situation.
22              Our argument -- because the Court would have
23   literally struck down the statute as unconstitutional.  Here
24   *Pepe* absolutely did not go to the Commerce Clause.  Pepe was a
25   statutory interpretation.
```

UNITED STATES DISTRICT COURT

1          A court subsequent statutory interpretation is

2     absolutely something that a defendant can waive.  That's the

3     whole point of the plea agreement -- the plea process.  The

4     government gives up, and the defendant gives up.  It's a

5     negotiation.  It's a bargain that's struck and --

6          THE COURT:  In everybody's best interest for a

7     variety of reasons.

8          MS. DONAHUE:  For a wide variety of reasons.  And

9     that certainly is what happened in this case.

10          But the -- one of the things that the defendant gave

11     up was that a court would later interpret his statute of

12     conviction differently.  That is absolutely waivable.  As the

13     Ninth Circuit cases that we cited point out, sometimes a waiver

14     involves the giving up of a claim that could have been

15     meritorious.  That's part of the bargain.

16          And that is, we respectfully submit, what happened

17     here.  The Ninth Circuit interpreted the statute in a way that

18     is favorable to him, would have given him a stronger defense.

19     We definitely, as the Court knows, still would argue he was

20     traveling, but he gave that up.

21          THE COURT:  All right.  You've answered my question.

22          MS. DONAHUE:  Thank you.

23          THE COURT:  Okay.  Let's talk about the plea

24     agreement waiver.

25          MS. SLOAN-HILLIER:  Good morning, Your Honor, again.

```
 1   Well, we are arguing not that the statute was unconstitutional.
 2   I just want to clarify that.  We believe the waiver was
 3   correctly interpreted by the Court.  But even if it's not, it
 4   violates the Constitution for Mr. Sporich to be convicted of a
 5   crime that wasn't a crime when -- and Pepe made that very, very
 6   clear.  A conviction under 2423(c) when based on a defendant's
 7   travel in foreign commerce requires proof illicit sexual
 8   conduct occurred while the defendant was traveling.
 9          If he relocated to Cambodia, the statute doesn't
10   apply, period.  It's simple.  They made it very clear.  And
11   they sent Pepe back because he couldn't be convicted of that
12   crime.
13          So to say, well, that the waiver -- because the word
14   "explicit" isn't in there somewhere, this was a retroactive
15   change in his statute of conviction clearly, our opinion.
16          THE COURT:  It isn't though, is it?  It's a
17   clarification of the statute of conviction.  Here would be
18   easier.  This is what I thought -- and I'm sorry to interrupt.
19          MS. SLOAN-HILLIER:  That's okay.  I'm happy to hear
20   you.
21          THE COURT:  Let's say it was backwards.  Okay?  If
22   the statute was initially written as it is now where it
23   includes residency, someone convicted because they are a
24   resident and travels, the way it's written now.  And then the
25   statute was amended to just say you have to be traveling when
```

1    you commit the crime and that statute is retroactively applied.

2    That's typically what we are talking about with an explicitly

3    retroactive statute of conviction, aren't we?

4              That's different than what happened here which is a

5    clarification of an existing statute.

6              MS. SLOAN-HILLIER:  Well, no, I obviously don't

7    agree with that.  I think that they -- the Court has misapplied

8    under *Clark*.  *Clark* doesn't hold anymore.  And the defendant's

9    conviction was based on the holding in *Clark* which they say,

10   well, we were wrong.  Based on what we see now, clearly that

11   was wrong.

12             If he was living in Cambodia and not traveling, he

13   can't be convicted of this.  That's our point.  And the

14   constitutional issue that we raised, of course, is that there's

15   ex post facto issues here that make it unconstitutional.  Not

16   that the statute is unconstitutional.  And I think the Ninth

17   Circuit would agree.  Hopefully we don't have to go back and

18   ask them, Your Honor.

19             But, you know, this is -- I think this is so clear,

20   and I don't think they would have reversed *Pepe* if they didn't

21   agree with that.  You have to be traveling.  You can't be

22   living in Cambodia and be convicted under this statute.  And

23   it's unconstitutional to convict somebody of a crime that

24   wasn't a crime when they were convicted.  So, I mean, nobody

25   could argue with that I don't think, Your Honor.

 1          THE COURT:  Are you saying -- so I'm just dealing

 2   with it in steps.  So are you still taking the position that

 3   the plea agreement waiver is -- it's -- are you saying that

 4   it's valid but it's unenforceable because you can't enforce a

 5   waiver because he's factually innocent of the crime?

 6          MS. SLOAN-HILLIER:  No.  I'm saying that the waiver

 7   applies.  He didn't waive it.  But if the Court made a finding

 8   that he did waive it, if you agreed with the government, you

 9   can't do it anyway because it's unconstitutional.

10          THE COURT:  Okay.

11          MS. SLOAN-HILLIER:  So it's a two-step.  But our

12   first position is that this waiver certainly applies to this.

13          The cases that the government cited in their papers

14   were all changes to sentencing statutes.  I didn't see a case

15   anywhere where we have this kind of facts.  When the sentencing

16   rules are changed, then it doesn't apply.  That waiver, however

17   it's written, would be proper.  But this is a very, very

18   different animal, Your Honor.

19          THE COURT:  Okay.  The other question I had -- the

20   government hasn't had a chance to respond.  In the tentative

21   order that we sent out, in Footnote 3 we say, "Petitioner does

22   not claim that he can meet the alternative 'cause and

23   prejudice' standard."  And you didn't raise it until the -- I

24   was expecting, if you thought we were wrong, that you did raise

25   it -- that you would have raised your hand in the initial

response and say we are arguing cause and prejudice.  But then
you don't raise it until the final response, and the government
didn't have a chance to respond.  So what's your position on
cause and prejudice?

          MS. SLOAN-HILLIER:  Let me just check the response.
I thought I did raise it.

          THE COURT:  If you did, I may have missed it.  I
thought I didn't see it raised until the last filing.

          MS. SLOAN-HILLIER:  No, the last one was the one I
filed yesterday.

          THE COURT:  Not the evidentiary filing.  The
response --

          MS. SLOAN-HILLIER:  Oh, yeah, I think the government
actually replied to our reply.

          Is that correct, Ms. Donahue?  I believe --

          THE COURT:  The first filing we have are
September 20th.  And so that's the response to the Court's
tentative ruling.  And in that response I don't see anything
that takes on the Court's conclusion that the petitioner does
not claim that he can meet the alternative cause and prejudice
standard.  I don't see anything in the response to the Court's
order.

          It's not until the reply which is filed on
October 1st that the petitioner raises for the first time that
he is arguing the cause and prejudice standard.  So I'm

1    wondering about the timing and the government not being able to

2    respond to that new argument.

3              MS. SLOAN-HILLIER:  Certainly the government has had

4    time since then to respond to it.  And they filed something on

5    the same day.

6              THE COURT:  But those were like ships passing in the

7    night.

8              MS. SLOAN-HILLIER:  Yeah, yeah, because I didn't

9    see --

10             THE COURT:  Why didn't you raise it in the reply in

11   the response to the Court's order is my question if I

12   explicitly said in Footnote 3 that the petitioner is not

13   raising cause and prejudice?

14             MS. SLOAN-HILLIER:  I'm not sure why I filed it when

15   I did.  There was a flurry of filings.  I was trying to get

16   everything in.  I was a little bit under the weather, and so I

17   did the best I could to make sure we made our record.  I don't

18   think it should be waived.  Certainly that was plenty of time.

19   The government has filed several pleadings since then and had

20   an opportunity to address it and didn't.  So it's not like it

21   surprised them, I filed it yesterday.  It was filed on what?

22   October 1st?

23             THE COURT:  Right.  But there was no mechanism for

24   additional briefing.

25             MS. SLOAN-HILLIER:  Certainly the government could

1   have asked the Court for leave to respond to the

2   government's -- I mean this is -- we are talking over 30 days

3   ago.  The government has had an opportunity to respond to this.

4   I don't think it was untimely.

5           THE COURT:  Okay.  Anything else about the waiver

6   and what we've been talking about?  Anything else to add?

7           MS. SLOAN-HILLIER:  No, Your Honor.

8           THE COURT:  Ms. Donahue, just on the cause and

9   prejudice aspect?

10          MS. DONAHUE:  Yes, Your Honor.  As we addressed in

11  our initial opposition to the 2255 which we filed last

12  December, in December of 2018, the defendant absolutely cannot

13  show cause.  He raised this argument in the district court.  He

14  raised this argument in his direct appeal in the Ninth Circuit.

15  He filed an opening brief.  We filed a responsive brief.  He

16  filed a reply.  And he withdrew his appeal shortly before the

17  oral argument.  And the exhibits supporting that are all

18  attached to the government's opposition.

19          So he absolutely cannot demonstrate cause on this

20  claim in his current petition.

21          THE COURT:  Okay.  All right.  And then, again, in

22  oral argument the petitioner again argues that basically the

23  agreement is unenforceable because the Constitution is violated

24  when someone who is actually innocent is convicted separate and

25  apart from whether or not he's actually innocent.

1          MS. DONAHUE:  So he's not actually innocent.

2          THE COURT:  Right.

3          MS. DONAHUE:  And the case law -- this is not a

4  substantive constitutional issue.  This is not a case where the

5  Supreme Court or even the Ninth Circuit has struck down a

6  statute for violating the Constitution.

7          This case sort of falls squarely under all the cases

8  that say a valid appellate waiver is enforceable against a

9  subsequent change in the law.  This is a subsequent change in

10  the law.  This is not a new constitutional rule that the

11  Supreme Court has announced.  And this is not a miscarriage of

12  justice because he is not factually innocent.

13          And what the Court did in *Pepe* was say at that trial

14  the government did not show that the sexual acts happened while

15  the defendant was traveling.  Therefore, the Court -- the Court

16  didn't just strike down the -- declare *Pepe* actually innocent.

17  The Court remanded the case for retrial.

18          THE COURT:  Okay.  And then moving on to the

19  evidentiary aspect of --

20          MS. SLOAN-HILLIER:  May I comment just briefly,

21  Your Honor?

22          THE COURT:  Go ahead.

23          MS. SLOAN-HILLIER:  I want to cite the Court to

24  *Vosgian*.  I'm probably not pronouncing it correctly.  I'm

25  terrible at -- 742 F.3d 1131.  And it says that actual

```
 1   innocence is that -- to show in light of subsequent case law
 2   that he cannot as a legal matter have committed the alleged
 3   crime.  That's where we are.  I think this is simple.  And I
 4   just want to -- I'm just a little frustrated with the argument
 5   where the direction the Court is going.
 6              THE COURT:  Well, both sides think this is simple.
 7   I don't.  No, I'm joking.  I was joking.  Ms. Donahue, I was
 8   just joking.
 9              MS. DONAHUE:  I don't think it is.
10              THE COURT:  Maybe I shouldn't be joking.  It's not
11   simple.
12              MS. SLOAN-HILLIER:  Motion to strike, Your Honor.
13              THE COURT:  Okay.  Now, both sides have submitted
14   matters for submission as to the evidentiary hearing.
15              Ms. Donahue, how would the government like to
16   proceed with regard to evidence that he was traveling?  Is
17   there any objection to the spreadsheet, I guess?
18              MS. DONAHUE:  No, Your Honor.
19              THE COURT:  Both sides using the spreadsheet.
20              MS. SLOAN-HILLIER:  Your Honor, I was going to ask
21   Mr. -- ask that Mr. Sporich be sworn in.  And I don't know if
22   the government wants to wait until after they've had an
23   opportunity to question him to proceed with their argument, but
24   I just wanted to let the Court know that that is what I'd like
25   to do if the Court is willing to do that.
```

 1          MS. DONAHUE:  Your Honor, the government does not

 2     obviously -- does not object to that.  What I told counsel

 3     before the hearing is that she had said she hadn't had an

 4     opportunity to speak with her client.  I know that he is ill,

 5     he is appearing remotely, and he has not seen the documents

 6     from Yavapai County, Arizona regarding the -- Exhibit 2 that

 7     the government presented yesterday which are the sex offender

 8     registration documents.

 9          The government has no interest in quizzing the

10     defendant about documents he hasn't seen.  But if he is

11     available for cross, there are some sort of basic questions

12     that the government would ask regarding what we respectfully

13     submit is his compliance with the sex offender registration

14     laws in Arizona.

15          THE COURT:  Okay.  So --

16          MS. DONAHUE:  It's fine with us if he is sworn as a

17     witness.  And if counsel wants to elicit questions, the

18     government does have a few cross-examination questions for him

19     if the Court is inclined to hear that.

20          THE COURT:  Okay.  But in terms of evidence that the

21     government wants to offer, besides the spreadsheet, Exhibits 1

22     and 2, is there any other evidence?

23          MS. DONAHUE:  There is no other evidence,

24     Your Honor.

25          THE COURT:  So basically there's a request to

```
 1   cross-examine the maker of the spreadsheet?  Is that what --
 2              MS. SLOAN-HILLIER:  No, Your Honor.  Mr. Sporich.
 3              THE COURT:  Oh, Mr. Sporich.  So there's no
 4   objection to the exhibits that were submitted by the
 5   Government, 1 and 2?
 6              MS. SLOAN-HILLIER:  No, Your Honor.
 7              THE COURT:  So those are admitted.
 8         (Exhibit Nos. 1 and 2 received into evidence.)
 9              THE COURT:  Are there any -- essentially the defense
10   also cites to the spreadsheet and then a portion of B, C, and
11   D.  Is there any objection to the Court considering B, C, and
12   D?
13              MS. DONAHUE:  No, Your Honor.
14              THE COURT:  So all exhibits that have been submitted
15   are admitted.
16         (Exhibit Nos. B, C, and D received into evidence.)
17              THE COURT:  The next question was the petitioner
18   wanted to examine Mr. Sporich.
19              MS. SLOAN-HILLIER:  Your Honor, I would like to --
20   if we need to make a record, I would like to make a record.  I
21   think that the government would agree that he's going to say --
22   I suggested maybe we stip that we know what he's going to say.
23   But maybe just ask him a few questions so we have a record of
24   it.
25              THE COURT:  Well, though if the government wants to
```

**UNITED STATES DISTRICT COURT**

```
 1  make some inquiry as to the submissions, don't you think we
 2  might want to adjourn and let him see so there's some
 3  preparation as to what these documents are that he may be asked
 4  about?
 5              MS. SLOAN-HILLIER:  No, I don't think that's
 6  necessary, Your Honor.  I've looked at the documents.
 7  Basically the government has presented evidence that he was in
 8  compliance with his registration duties under Arizona law.
 9  That's what the government has presented to the Court, that he
10  was in compliance.  So we don't argue with that.  He was in
11  compliance.
12              THE COURT:  But I'm not sure if the cross is going
13  to go beyond -- more detailed about the documents that he --
14  whether it would be a better idea that he review the documents
15  before he proceed to cross-examination.  I'm not predicting
16  what the government is going to ask.
17              MS. SLOAN-HILLIER:  I know.  May I confer with
18  Ms. Donahue for a second?
19              THE COURT:  Yes.
20              MS. SLOAN-HILLIER:  Thank you.
21              (Discussion held off the record.)
22              MS. SLOAN-HILLIER:  I feel comfortable, Your Honor,
23  moving forward.
24              THE COURT:  Okay.  I guess let's swear Mr. Sporich
25  in and allow you to examine him, and then we'll have
```

1    cross-examination.

2            Mr. Sporich, I hope you've been able to hear this.

3    Ms. Hernandez is going to swear you in as a witness.

4            MS. SLOAN-HILLIER:  Jack, can you hear us?

5            THE DEFENDANT:  Yes.

6            MS. SLOAN-HILLIER:  Did you hear the Court was

7    inquiring whether you were following the proceedings?

8            THE DEFENDANT:  Did I what?

9            MS. SLOAN-HILLIER:  That you were following the

10   proceedings.  You understand what's going on?

11           THE DEFENDANT:  Yes, I'm following what you are

12   saying.

13           THE COURT:  All right.  Go ahead -- Ms. Hernandez,

14   go ahead and swear the witness in.

15           THE CLERK:  If you can please raise your right hand.

16           Do you solemnly swear that the testimony you shall

17   give in the cause now before the Court shall be the truth, the

18   whole truth, and nothing but the truth, so help you God?

19           THE DEFENDANT:  I do.

20           THE CLERK:  Thank you.

21           THE COURT:  You may inquire.

22           MS. SLOAN-HILLIER:  Thank you, Your Honor.

23                    JACK LOUIS SPORICH,

24   called as a witness, was sworn and testified as follows:

25   ///

```
 1                       DIRECT EXAMINATION
 2   BY MS. SLOAN-HILLIER:
 3        Q      Can you hear me okay, Jack?
 4        A      Yes.
 5        Q      Okay.  I'm just going to ask you a few questions.
 6               Where were you living between 2006 and 2009?
 7        A      In Cambodia.
 8        Q      Was that your permanent residence?
 9        A      At the time it was.
10        Q      Were you ever planning on returning to live in
11   Sedona?
12        A      Not -- no, because my wife was in Cambodia.  My
13   son was in Cambodia, and we had no intentions of going to the
14   U.S. other than maybe to visit --
15        Q      Can you answer yes or no, please, when I ask you
16   a question?  So the answer to that is, no, you were not
17   planning on returning to Sedona?
18        A      Correct, yes.
19        Q      Were you in compliance with the Arizona
20   registration law?
21        A      Yes.
22        Q      So you continued to update your registration per
23   the Arizona law that required you to get a new driver's license
24   every year?
25        A      Yes.  Because I wanted to drive when I came back
```

1    to visit.

2         Q       And that's why you maintained your registration,

3    so that you would be able to drive legally in Arizona when you

4    visited?

5         A       Yes.  I had an automobile there.  So I wanted to

6    visit my niece and my sister.

7         Q       In 2009 did you send an e-mail to the sheriff's

8    department?

9         A       In 2009?

10        Q       Advising them that you had moved to Cambodia?

11        A       I don't remember that.

12            MS. SLOAN-HILLIER:  Okay.  Nothing further,

13   Your Honor.

14            THE COURT:  All right.  Ms. Donahue, cross?

15                    CROSS-EXAMINATION

16   BY MS. DONAHUE:

17        Q       Good afternoon, Mr. Sporich.

18        A       Good afternoon.

19        Q       You stated that starting in 2006 you lived in

20   Cambodia.

21        A       Yes.

22        Q       But, in fact, between 2006 and 2008, you made

23   several flights back to the United States; isn't that correct?

24        A       Yes.

25        Q       You traveled to the United States back to Sedona,

```
 1   Arizona; is that correct?
 2        A       Yes.
 3        Q       You had a condominium in Sedona; correct?
 4        A       Yes.
 5        Q       And that condominium belonged to you; correct?
 6        A       Yes.
 7        Q       No one else lived there; correct?
 8        A       Yes.
 9             THE COURT:  I'm sorry.  I think the question is
10   ambiguous.  It was a double negative.  I can't tell if no one
11   else lived there or -- when he said correct.
12             THE WITNESS:  Correct.
13   BY MS. DONAHUE:
14        Q       Other than you, no one lived at the condominium
15   in Sedona, Arizona; correct?
16        A       Correct.
17        Q       You maintained your belongings at the condominium
18   in Sedona, Arizona between 2006 and 2009; correct?
19        A       Not really true because, as I was making my
20   flights, I was -- if you read the -- what is it?  The -- if you
21   read the reports from the airport when they checked my luggage,
22   they stated that when I came back -- when I came from Cambodia
23   my suitcases were empty and when I went back they were full.
24   So what I was doing was taking things from Arizona, bringing
25   them back to Cambodia.
```

25

1      Q     You had a computer at your residence in Arizona;

2  right?

3      A     Correct.

4      Q     And you had photographs at your residence in

5  Arizona; right?

6      A     Yes.

7      Q     Going back to 2004, in 2004 you moved to Arizona;

8  correct?

9      A     Correct.

10     Q     In Arizona in May of 2004, you registered as a

11  sex offender; right?

12     A     Correct.

13     Q     You initialed the form that said, "I understand

14  that I have 72 hours to notify the sheriff in person when I

15  move from a county in which I am registered"; correct?

16     A     I don't recall, but I assume that was correct.

17     Q     You also filled out a registration form in

18  Yavapai County, Arizona in May of 2006; correct?

19     A     I don't recall.

20     Q     You supplied the sheriff in Arizona with your

21  driver's license every year in 2006 and 2007; correct?

22     A     Correct.

23     Q     And you did that because you knew that was

24  required as part of your registration; correct?

25     A     Correct.

**UNITED STATES DISTRICT COURT**

1     Q      In Cambodia you were arrested in February of

2     2009; right?

3     A      Correct.

4     Q      And you were incarcerated in Cambodia for a

5     number of months after your arrest; isn't that right?

6     A      Correct.

7     Q      And in August of 2009, you were released from

8     custody in Cambodia; correct?

9     A      Correct.

10    Q      I'd like to read an e-mail that is from --

11    appears to be from you in August 13th of 2009.  Do you recall

12    writing this e-mail?

13           It states, "Sex Offender Registration.  This

14    letter is to inform you that I am no longer a resident of

15    Arizona.  I am currently a resident of Siem Reap, Cambodia.  I

16    would send you this in regular mail, but in this country, mail

17    is questionable as to delivery to and from.  If there are forms

18    I need to fill out, please e-mail them to me, and I will return

19    the completed forms ASAP.  Thank you, Jack Louis Sporich."  And

20    then listing your former address as your condominium in Sedona,

21    Arizona.

22    A      It sounds very familiar, yes.

23    Q      And that is from an e-mail address

24    Jarich@commspeed.net.

25    A      Correct.

1    Q    So at that time in August of 2009, you gave the

2  sheriff written notice as required by Arizona law that you were

3  no longer a resident of Arizona; correct?

4    A    Yes, correct.

5         MS. DONAHUE:  I have no further questions.

6         THE COURT:  Redirect?

7                      REDIRECT EXAMINATION

8  BY MS. SLOAN-HILLIER:

9    Q    Mr. Sporich, do you recall that the sheriff's

10  department in Arizona had left a card on the condominium or

11  with the condominium in Arizona trying to set up an appointment

12  with you?

13   A    I don't recall that.  It's very possible because

14  my sister lived nearby.  She probably would have picked it up

15  if it was on the door or something like that.

16   Q    Is your brother-in-law William Kane?  Is that

17  your brother-in-law?

18   A    Yes.  He has died about a year or two ago.

19   Q    If he had given a message to the sheriff's

20  department in 2007 that you were out of the country, would that

21  be something that you would have directed him to do?

22   A    I wouldn't know that.

23   Q    Did you tell your family that you were living in

24  Cambodia in 2007?

25   A    Yes.

```
 1            MS. SLOAN-HILLIER:  Nothing further, Your Honor.

 2            THE COURT:  Recross.

 3            MS. DONAHUE:  I have nothing further, Your Honor.

 4            THE COURT:  Thank you.

 5            Any additional evidentiary matters?

 6            MS. DONAHUE:  No, Your Honor.

 7            MS. SLOAN-HILLIER:  No, Your Honor.

 8            THE COURT:  All right.  Let me just take a

 9  five-minute break.  I think what I want to do -- do counsel

10  just want to argue it?  Do you want to submit further briefing

11  in terms of this issue of actual innocence, or how do you want

12  to proceed or both?  Ms. Donahue, any thoughts about how to

13  proceed?  Do you want to get a transcript?  Do you want to just

14  go forward?  How do you want to do this?

15            MS. SLOAN-HILLIER:  I'm not understanding your

16  question, Your Honor.

17            THE COURT:  I'm going to take a five-minute break.

18  So I'm asking do you want to have an argument, submit it, I'll

19  go off and write something?  Or do you want a chance to get the

20  transcript, write a final -- argue a little now, get the

21  transcript, make your pitches in writing and have a final bite

22  at the apple?  That's what I'm proposing.  I'm fine either way.

23            One, we can just after the break argue, submit it.

24  Or after the break, argue, get a copy of the transcript, write

25  some kind of final trial brief, and then one final argument.
```

```
 1   Those are a couple ways we could proceed.  There could be other
 2   ways I haven't thought of.  But go ahead and think about it and
 3   let me know after the break.  Make sense now?
 4            MS. SLOAN-HILLIER:  Your Honor, in terms of getting
 5   the transcript, would it be possible to expedite that?
 6   Mr. Sporich sadly is terminal, and I would like to tentatively
 7   have an opportunity to brief it and look at the transcript.
 8   But if it takes --
 9            THE COURT:  It's not going to take that long.
10            THE REPORTER:  Three days.
11            THE COURT:  Three days.  So if we get the
12   transcript, let's say, Friday or Monday, that we can set up
13   some briefing that week and then come back in two weeks and
14   argue it if that's how you want to do it.  I'll leave it to
15   you.  It doesn't matter.
16            MS. SLOAN-HILLIER:  We'll confer, Your Honor.  Thank
17   you.
18            THE COURT:  Thank you.
19            (At 10:44 a.m. a brief recess was taken.)
20            THE COURT:  Okay.  I'm assuming everybody has
21   conferred.  How would the parties like to proceed?
22            MS. SLOAN-HILLIER:  Your Honor, Mr. Sporich would
23   like to have additional time to speak to me before we submit
24   the matter.  So I think we are going to ask for expedited
25   transcript, do some briefing, and get back here as soon as
```

```
 1   possible with Mr. Sporich in attendance like this.

 2            THE COURT:  Okay.  Is that acceptable to the

 3   government?

 4            MS. DONAHUE:  That is, Your Honor.  I told counsel

 5   if the defense is going to submit any supplemental declaration

 6   from Mr. Sporich, the government would --

 7            THE COURT:  Cross-examine --

 8            MS. DONAHUE:  -- want to cross.  And we'll arrange

 9   with Mr. Tafoya who has been very gracious about getting the

10   video arranged.

11            THE COURT:  Okay.  Let's assume the transcript will

12   be ready let's say -- Monday is a holiday.  Can we have it by

13   Friday?  Okay.  So you'll have the transcript by Friday.

14            Then the question is how soon can the parties digest

15   the transcript and write some kind of final brief?

16            MS. DONAHUE:  Would the Court like simultaneous

17   briefing, or does the Court want --

18            THE COURT:  Let's do simultaneous.  And if there's a

19   response to it, then it can be done orally.  Why don't we have

20   simultaneous.  If there's something, you know, left

21   unaddressed, we can deal with it at argument and then go from

22   there as opposed to another three rounds of briefing.

23            MS. SLOAN-HILLIER:  That's fine with the defense.

24            MS. DONAHUE:  Okay.

25            THE COURT:  How much time -- if you get the
```

```
 1  transcript Friday, how much time do you need to put something
 2  in writing for the Court?
 3             MS. SLOAN-HILLIER:  I imagine within ten days at
 4  least or maybe sooner.
 5             THE COURT:  Okay.  So why don't we say -- how about
 6  Monday -- that would give you ten days.  How about simultaneous
 7  briefs November 18th?
 8             MS. SLOAN-HILLIER:  Yes, Your Honor.
 9             THE COURT:  Does that work for the government?
10             MS. DONAHUE:  That does work for the government.
11             One logistical question.  If counsel is going to
12  speak with her client, next Monday is a federal holiday.  Is
13  that going to work in terms of the logistics in terms of --
14             THE COURT:  Are you going to have enough time to
15  speak with your client and write something?
16             MS. SLOAN-HILLIER:  May I inquire of Mr. Taylor?
17  That's my hookup for talking to him.
18             THE COURT:  Go ahead.
19             MS. SLOAN-HILLIER:  When is the soonest that I could
20  speak with Mr. Sporich for your scheduling?  I heard you say
21  you are off tomorrow.  Are you there Friday?
22             MR. TAYLOR:  No, not at all Friday.  I'll be back on
23  Thursday, and I have another deposition on Thursday.  But just
24  let me know what time we are going to do it, and I can make
25  myself available.  If you want to talk to him on Thursday --
```

1   because right now he's at FMC.  So he's coming back over to the

2   FCI 1 which is my -- which is his branch facility on Thursday.

3   Hopefully I can get him back to the unit by 4:00.

4           So if Thursday if he's back to my unit, let's say,

5   early morning, I can make something work for you.  So if

6   Thursday is good for you, I can make it work on Thursday.

7           MS. SLOAN-HILLIER:  Thursday doesn't work?

8           THE COURT:  I think he said he can make it work.

9           MR. TAYLOR:  I can make it work.

10          MS. SLOAN-HILLIER:  Any time that's good for you is

11  good for me.  I'll make it work.  You tell me when --

12          MR. TAYLOR:  Just e-mail and let me know what time,

13  and I'll make it work.

14          MS. SLOAN-HILLIER:  Thank you.

15          THE COURT:  Briefs on November 18th.  And then how

16  about final argument sometime after that.  The 25th of

17  November?  Are people going to be around that week?  It's

18  Thanksgiving.

19          MS. SLOAN-HILLIER:  I'm engaged in another hearing

20  on the 25th.

21          THE COURT:  How about Friday the 22nd?

22          MS. SLOAN-HILLIER:  That works.

23          MS. DONAHUE:  Yes, I think that works, Your Honor.

24  Yeah, Friday the 22nd.

25          THE COURT:  How about 10:00?

```
1              MS. DONAHUE:  Yes, Your Honor.

2              MS. SLOAN-HILLIER:  Yes, Your Honor.

3              THE COURT:  All right.  Thank you.

4              MS. DONAHUE:  Thank you, Your Honor.

5              MS. SLOAN-HILLIER:  Thank you, Your Honor.

6              (At 10:56 a.m. the proceedings adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT

 6   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

 7   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

 8   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

 9   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

10   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

11   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

12   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14

15                         DATED THIS  8TH  DAY OF NOVEMBER, 2019.

16

17

18                         /S/ MAREA WOOLRICH
                           _____
19                         MAREA WOOLRICH, CSR NO. 12698, CCRR
                           FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**